ROSTER, Respondent, v. INTER-STATE POWER COMPANY, Appellant.

(237 N. W. 738.)

(File No. 7174. Opinion filed July 20, 1931.)

*Parliman & Parliman,* of Sioux Falls, for Appellant.

*Krause & Krause* and *E. P. Van Buren,* all of Dell Rapids, for Respondent.

ROBERTS, J. This is an appeal from an order overruling defendant's demurrer to the complaint of the plaintiff, who, as administratrix of the estate of her deceased husband, Theodore I. Roster, brought this action to recover damages from the defendant for the death of said decedent.

The complaint alleges, in substance, that the defendant owned and operated an electric light and power plant in the city of Hartford and supplied the citizens and residents of that city and community with electric current for lighting purposes; that for a consideration defendant undertook to furnish Theodore I. Roster as one of its customers electric current sufficient in quantity and volume for the purpose of lighting his dwelling house; that for such purpose the defendant had erected and maintained main or primary wires strung on poles along the street immediately west of the Roster dwelling house, capable of transmitting electric current of some 2,200 volts, and that contact therewith is death-dealing to human life; that for the purpose of furnishing said Roster with electric current for his dwelling house the defendant had extended secondary wires to the dwelling house; that 110 volts is a safe and sufficient current for lighting purposes; that to transmit such quantity over the secondary wires defendant had installed and maintained an instrument known as a transformer, designed to reduce and limit the current from the primary wires to 110 volts to pass over the secondary wires into the dwelling house for lighting purposes; that defendant connected its secondary wires to the lighting system in the dwelling house for the purpose of furnishing and supplying electric current sufficient and safe in quantity for lighting the dwelling; that it was defendant's duty to construct and equip its plant for supplying current in such manner and with such devices, and maintain and operate the same, so as to enable it at all times to control and to limit the current by it supplied over its wires and equipment to the lighting system in the Roster dwelling, and to maintain the use thereof safe and not harmful to Theodore I. Roster and members of his family residing with him; that on the contrary the defendant did so negligently con-

struct, install, maintainfi and operate its plant and source of its supply of electric current as to, and did so negligently and carelessly, permit passage onto and transmit over its equipment and secondary wires into the Roster dwelling on the night of June 3, 1930, of such excessively dangerous and death-dealing current of electricity as to cause the instant death of Theodore I. Roster, by and through an electric current sustained by him through such excessive current, without fault or negligence on his part, when he came in contact with and touched a switch and drop cord of the lighting system in his house, which shock so received by him was the proximate and direct cause of his death and was occasioned by the negligence and carelessness of the defendant in permitting excessive, dangerous, and death-producing current of electricity to be transmitted to and to traverse the wires running to and into the dwelling house of the decedent; that there was left surviving said Theodore I. Roster, the plaintiff, his wife, and his infant son, both of whom on account of his death have sustained pecuniary loss and damage in the sum of $20,000 and the further sum of $300 for burial of the decedent.

The defendant demurred to plaintiff's complaint on the grounds: "(1) That the court has no jurisdiction over the person or the subject matter of the action, and (2) that the complaint does not state facts sufficient to constitute a cause of action." The demurrer was overruled by the trial court.

■ Plaintiff instituted this action under statutes of this state permitting the recovery for death by wrongful act. Sections 2929-2931, R. C. 1919. These sections create rights and recognize remedies unknown to the common law. Independent of statutory authority there is no cause of action arising from the death of a human being. Rowe v. Richards et al, 35 S. D. 201, 151 N. W. 1001, L. R. A. 1915E, 1075, Ann. Cas. 1918A, 294; Panama Ry. Co. v. Rock, 266 U. S. 209, 45 S. Ct. 58, 69 L. Ed. 250; Keasler v. Mil. Elec. Ry. & Light Co., 195 Wis. 108, 217 N. W. 687.

■ Plaintiff alleges damages in the sum of $20,300, and the prayer for relief is in the same amount. Defendant contends that the allegations of the complaint disclose an action upon which the jurisdiction of the circuit court does not attach. Defendant relies in support of its contention upon the following provision of section 2931, R. C. 1919: "In every action the jury may give such dam-

ages, not exceeding in any case ten thousand dollars, as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

It is not the purpose of this provision to define the jurisdiction of circuit courts or to prohibit the exercise of jurisdiction where the amount involved or claimed exceeds a fixed amount. There is a recognition in this statutory limitation that the value of a human life may exceed $10,000, and to relieve defendants from possible oppression the Legislature has fixed the maximum recovery. There may be allegation and proof of the actual pecuniary injury resulting from the death, but the amount of recovery is limited by statute.

Defendant under the second ground of demurrer urges that there is no sufficient allegation of negligence on the part of the defendant to constitute a cause of action. It is elementary that actionable negligence consists in (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure on the part of the defendant to perform that duty; and (3) injury resulting to the plaintiff as a result of defendant's breach of duty. The absence of any one of these three essential elements renders a complaint insufficient. 45 C. J. pp. 631, 632.

While an electric light company is not an insurer of the safety of its patrons, it is obliged to use a degree of care commensurate with the risks and dangers involved in transmitting an electric current into a dwelling house, and a patron has a right to assume that he will be furnished electric current so as not to imperil his safety. On the subject of responsibility of an electric light company to its patrons, the Supreme Court of Colorado in the case of Denver Consolidated Electric Co. v. Lawrence, 31 Colo. 301, 73 P. 39, 42, says: "The business of the defendant is that of selling electricity; * * * a business so fraught with peril to the public that the highest degree of care which skill and foresight can obtain, consistent with the practical conduct of its affairs under the known methods and present state of its particular art, is demanded. * * * The plaintiff, while attempting to do that which every patron of the company must do to make use of the electric light, received into his body a current of electricity * * * permanently injuring him. Such injuries are not, under ordinary cir-

cumstances, received by persons who turn on an incandescent lamp, if the company supplying the current has not been negligent. The defendant, when it contracted * * * to sell electricity for light, contracted to keep its plant and appliances in such condition that no greater volume of electricity would be carried into the house than was necessary for its proper lighting. The quantity of electricity required for lighting purposes in residences is not sufficient, if it pass through the body, to cause the injuries described by the plaintiff. * * * It follows, therefore, that the plaintiff must have received a very much greater quantity of electricity than the company contracted to supply."

In Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, 777, Ann. Cas. 1917A, 1164, the court thus states the duty and measure of care resting on and required of an electric company rendering service to individuals: "While an electric light company is not an insurer of the safety of its patrons, nor of people, who may come in contact with its wires and its apparatus while at places at which they have a right to be, and engaged at the performance of things which they have a right to do, it is required to exercise the very highest degree of care and skill in the installation, construction, and operation of its plant, and the highest degree of care and skill in the inspection of its wires and appliances and all of its apparatus to prevent injury to persons, and to that end should provide itself with and use the known necessary devices to control its electrical current, and prevent the passing of dangerous currents of electricity into the houses of its patrons, because the patrons of such a company and the persons on lawful business in the houses of the patrons have a right to assume, in the absence of knowledge to the contrary, that the appliances and fixtures of the company are free from defects which would permit the flow of an unnecessary and dangerous current of electrcity into the houses, endangering their lives or safety." See, also, Lynch v. Meyersdale Electric Light, Heat & Power Co., 268 Pa. 337, 112 A. 58; Alabama City, G. & A. Co. v. Appleton, 171 Ala. 324, 54 So. 638, Ann. Cas. 1913A, 1181; Coleman v. Iowa Ry. Light & Power Co., 189 Iowa, 1063, 178 N. W. 365.

When the defendant undertook to furnish plaintiff's intestate with electricity, it assumed a legal duty to such person to see that its plant was in such condition as to make it reasonably

safe for him to receive such dangerous agency into his dwelling, and to operate the plant with the highest degree of care that skill and vigilance can suggest, consistent with the practical conduct of the business. The plaintiff has alleged facts, if proved, to establish the existence of a legal duty on the part of the defendant toward her deceased husband. Having set forth a duty owing plaintiff's intestate, to constitute a cause of action, the complainant must disclose a breach of such duty, resulting in injury. It is alleged, in substance, that defendant company negligently permitted an excessive amount of electric current to pass over its secondary wires, and that contact with such overcharged wires was the cause of the death of plaintiff's husband. Defendant contends that the allegations are not sufficiently specific; that the complaint does not have the requisite definiteness to inform the defendant of the particular act or omission constituting the breach of duty.

It is the settled rule that negligence may be set forth in general terms, where the specific facts are more largely within the knowledge of the defendant. 8 R. C. L. 812; Bliss on Code Pleading, § 310a; New York, C. & St. L. Ry. Co. v. Callahan, 40 Ind. App. 223, 81 N. E. 670; Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497, 39 A. L. R. 1001; Tietke v. Forrest, 64 Cal. App. 364, 221 P. 681.

Plaintiff would not be expected to know the specific act or omission which caused the negligence. She alleges that the death was caused by an excessive current. What may have caused the passage of an excessive current over the secondary wires into the Roster dwelling is more peculiarly within the knowledge of the defendant company. As said in Texas Power & Light Co. v. Bristow, (Tex. Civ. App.) 213 S. W. 702, 705: "All that an average person could know, and therefore all that he would be required to allege was that the injury was the result of an excessive and dangerous current, and he would know this only because experience has taught that a current such as commonly used in lighting houses is not dangerous, and that in such case there is no danger in attaching an electric iron to a socket. This is an everyday occurrence. Where injury occurs in such use, of course, there is a defect somewhere. When and what it is is known only to experts in the use and management of electricity."

We have not considered the doctrine of "res ipsa loquitor" which plaintiff contends is applicable to the instant case. It is primarily a rule of evidence. There are numerous decisions, however, which support the rule that a complaint is not demurrable if a general allegation of negligence is properly connected with facts adaptable to "res ipsa loquitor," which we do not find necessary to consider for the purpose of this decision.

The order appealed from is affirmed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.