Reinhold BLUMHARDT and Alice Blumhardt, Plaintiffs and Appellants,

v.

P. A. HARTUNG, I. F. Hartung, Leonard Mayer, Hartung Construction Company, a corporation, and South Dakota Wheat Growers Association, a cooperative, Defendants and Respondents,

Roy Kelsey, Martin Robinson, George Thiel, and Loren Igo, Defendants.

No. 12488.

Supreme Court of South Dakota.

Argued April 24, 1979.

Decided Sept. 5, 1979.

Rehearing Denied Oct. 31, 1979.

Richard H. Battey of Gallagher & Battey, Redfield, for defendant and respondent, Leonard Mayer.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and respondent, South Dakota Wheat Growers Association, a cooperative.

Harvey C. Jewett of Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, for plaintiffs and appellants.

Daniel R. Fritz of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendants and respondents, P. A. Hartung and I. F. Hartung, Hartung Const. Co., a corporation.

FOSHEIM, Justice.

The plaintiff, Reinhold Blumhardt, seeks damages for injuries he sustained while working at the construction site of a grain elevator in Tulare, South Dakota. His wife, Alice Blumhardt, alleges loss of consortium resulting from these injuries. Worker's compensation benefits have been received. This action was for recovery against persons other than the employer under the South Dakota Worker's Compensation Law.[1] Defendants P. A. Hartung, Roy Kelsey and I. F. Hartung were officers of defendant Hartung Construction Company and defendant Leonard Mayer was the company foreman on the Tulare project. Martin Robinson, George Thiel, and Loren Igo became defendants by virtue of their employment with the defendant South Dakota Wheat Growers Association, the owner of the elevator. Defendants Robinson, Thiel, Igo, Kelsey, and Hartung Construction Company were voluntarily dismissed from the suit. The trial court granted motions for summary judgment dismissing all claims against the remaining defendants, P. A. Hartung, I. F. Hartung (Hartung), Leonard Mayer (Mayer), and South Dakota Wheat Growers Association (Wheat Growers). This appeal is from those judgments. The issues are: (1) Whether the Hartungs are individually liable for negligence in failing to provide a safe place to work; (2) whether Mayer is liable as the supervising foreman on the Tulare job; (3) whether Wheat Growers is liable, under theories (a) that it retained control over the work place to a degree sufficient so as to render it liable, (b) that it was conducting an ultrahazardous or inherently dangerous activity, and (c) that it failed to employ a competent contractor. We affirm as to the defendants P. A. Hartung, I. F. Hartung, and Leonard Mayer and reverse as to the defendant South Dakota Wheat Growers Association.

Hartung Construction Company (Company) was engaged in the business of building and repairing grain elevators. The Company was owned and operated by P. A. Har-

tung, I. F. Hartung, and Roy Kelsey. Each of these individuals would obtain grain elevator construction or repair contracts, draw up the necessary plans, give them to a foreman, and have the work completed.

Plaintiff Reinhold Blumhardt was hired by the Company sometime in the latter part of 1971. He was told to report to Tulare, where the Company was engaged in an elevator repair and renovation project. The grain elevator was owned by Wheat Growers. This project was under the on-site supervision of defendant Leonard Mayer, and under the overall supervision of defendant P. A. Hartung. Plaintiff was put to work as a construction laborer.

Plaintiff was injured on March 8, 1972, in an accident to which he was the only witness. His version of the facts is that the defendant Leonard Mayer instructed him to repair holes in a floor of the grain elevator which was approximately forty to fifty feet above the concrete ground floor, and is hereafter referred to as the first floor. Mayer also told plaintiff that if it became too dusty on the first floor, he should go below the first floor and repair the holes from underneath. There was nothing between the first floor and the concrete ground floor except a plank with one end nailed to the side of a grain bin. The other end was nailed to a wooden brace. When it became too dusty to work above the first floor, plaintiff went to a hand-operated elevator, and lowered himself until he was underneath the first floor. He then stepped out onto the plank, and began to measure the distance between the floor joists, so that he could cut boards of proper size to patch the floor from beneath. The plank gave way and plaintiff fell to the concrete ground floor. He was permanently injured.

The South Dakota Worker's Compensation Act (SDCL Title 62) provides for compensation of workers for injury while on the job. This recompense is the only right that the employee has against an employer. SDCL 62–3–2. An exception to the exclusivity of the act is a right of action against third persons as provided by SDCL 62–4–38:

Whenever an injury for which compensation is payable under this title shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may at his option either claim compensation or proceed at law against such other person to recover damages or proceed against both the employer and such other person, but he shall not collect from both.

█ It is established in this state that a co-employee may be "some other person than the employer" in an action at law for damages. *Wilson v. Hasvold*, 86 S.D. 286, 194 N.W.2d 251 (1972). SDCL 62–1–7 expressly provides that all corporate officers are regarded as employees.[2]

I. F. Hartung was the secretary and a safety officer of the Hartung Construction Company. P. A. Hartung was the president and also a safety officer of the firm. The first query is whether the Hartungs, as co-employees, have any common-law liability for the accident. Potential liability does not necessarily follow from their designation as co-employees, because an essential distinction is drawn between employees acting within and those acting without their corporate supervisory capacity.

█ In order to find actionable negligence, there must be a duty on the part of the defendant to protect the plaintiff from injury, a failure to perform that duty, and injury to the plaintiff resulting from such

2. SDCL 62–1–7 states:

Every duly elected or appointed executive officer of a corporation, other than a charitable, religious, educational, or other nonprofit corporation, shall be an employee of such corporation under this title.

This statute prevents "a corporate officer from wearing two hats at the same time. He cannot, at his option, be an 'employer' to gain immunity as the alter ego of the corporation and at the same time be an 'employee' for the purpose of receiving workmen's compensation benefits." *Wilson v. Hasvold*, 86 S.D. 286, 289, 194 N.W.2d 251, 253 (1972).

failure. *Cuppy v. Bunch*, 88 S.D. 22, 214 N.W.2d 786 (1974); *Ecklund v. Barrick*, 82 S.D. 280, 144 N.W.2d 605 (1966); *Roster v. Inter-State Power Co.*, 58 S.D. 521, 237 N.W. 738 (1931). In *Wilson v. Hasvold*, supra, the president and majority stockholder of the construction company was operating a caterpillar tractor at the work site which was being used to anchor or stabilize a crane when the boom on the crane collapsed and struck the plaintiff. We held that as an employee, the defendant could be individually liable insofar as his personal negligence caused or contributed to the plaintiff's injuries, but that, "as he cannot be considered an 'employer' for purposes of immunity, he cannot be held personally liable for conduct or conditions falling within the ambit of responsibility of the corporate employer." 86 S.D. at 293, 194 N.W.2d at 255. In *Wilson*, the defendant had a personal responsibility to exercise ordinary care in the operation of the tractor so that it did not contribute to the plaintiff's injury. SDCL 20–9–1.[3] Whether there was a breach of that duty was held to be a genuine issue of fact precluding summary judgment.

 Appellants claim that the defendants I. F. and P. A. Hartung, as individuals, were guilty of negligence in failing to provide safe working conditions. While an act of omission, as well as commission, may constitute a want of ordinary care, *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134 (1972), it must be founded on a duty of care owed by the wrongdoer to the person injured or to a class of which he is a member. *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W.2d 803 (1967). In *Wilson v. Hasvold*, supra, we quoted with approval from *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969):

"The appellant was not injured by a direct negligent act of Oliver, he wasn't even on the premises when the appellant was injured. The negligence the appellant complains of is Oliver's failure to provide a safe place for her to work as required by state law. Certainly the safety requirements under the labor laws should be enforced in this state and their violation should not go unpunished, but if Oliver was merely a third party fellow-employee, he had no duty to furnish a place for appellant to work—safe or otherwise. If the corporation was the employer and Oliver was the mere president, he was not personally liable in tort or under the compensation act for injuries sustained by corporate employees who are injured on defective corporate owned and maintained machines and equipment."

86 S.D. at 291, 194 N.W.2d at 254. The Hartungs cannot be held individually liable for working conditions which were the responsibility of the Company. As officers of that entity, P. A. and I. F. Hartung had such duties. Injuries resulting from their failures in that capacity, however, have been compensated under the Worker's Compensation Law. The umbrella of immunity extends accordingly.[4]

 Defendant Leonard Mayer was the Company job foreman on the Tulare project. This rendered his duties for the safety of his crew more immediate and direct. Adequate safety precautions apparently were not provided at the job site. The absence of such features, which likely would have prevented or lessened the impact of this accident, point to a serious lack of due care on the part of Mayer as job foreman. Again, however, such duties were within the ambit of his corporate responsibility. He was not present when the accident happened and the evidence shows no act of commission or omission on his part breaching any personal duty owed to the plaintiff. When a servant owes no legal

---

3. SDCL 20–9–1 provides:

Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

4. Since the time of this accident, SDCL 62–3–2 has been amended. It now excludes all other rights and remedies of the employee against co-employees except those arising from intentional tort.

duty to another person, such person cannot make out a cause of action in tort against the servant by showing that his failure to perform a duty, belonging to the master, has resulted in injury to himself. *Cain v. Meade County*, 54 S.D. 540, 223 N.W. 734 (1929).

The employer's immunity from common-law liability arises from the fact that he contributes to the compensation fund; absent contribution, no immunity exists. Our Worker's Compensation Law provides that the principal contractor is liable for payment of compensation to the same extent as any of his subcontractors.[5] Thus, in *Metzger v. J. F. Brunken & Son, Inc.*, 84 S.D. 168, 169 N.W.2d 261 (1969), we applied the *quid pro quo* concept and extended corresponding immunity to the principal contractor. Our decision in *Metzger*, however, made no mention regarding the owner of property.[6] That case involved a suit brought by an employee of a subcontractor against the general contractor. The property owner was not a party to the action. The *Metzger* rationale, though, would appear to exclude the property owner from immunity under the Worker's Compensation Law since the law imposes no corresponding compensation duties. In *Hagberg v. City of Sioux Falls*, 281 F.Supp. 460 (D.S.D.1968), the United States District Court for South Dakota noted the absence of South Dakota precedent regarding the liability of the property owner and referred to the Restatement (Second) of Torts (1965).

In so doing, the court determined that when contracted work is intrinsically dangerous, the property owner contracting to have it done owes a common-law duty to an employee of the independent contractor for his safety. This meant, in effect, that the property owner was not a beneficiary of immunity under the Worker's Compensation Law. 281 F.Supp. at 468, n. 7. In construing a similar statute, the Tennessee Appellate Court and the Sixth Circuit United States Court of Appeals, respectively, held in *International Harvester Co. v. Sartain*, 32 Tenn.App. 425, 222 S.W.2d 854 (1948), and *Womble v. J. C. Penney Co.*, 431 F.2d 985 (6th Cir. 1970), that the owner of property was not included within the purview of the Tennessee "statutory employer provision."

An absence of statutory immunity does not, of course, mean that common-law liability necessarily follows. Indeed, it is the general rule that an employer (property owner) is not liable for the torts of an independent contractor committed in the performance of the contracted work. *Hagberg v. City of Sioux Falls*, supra; *Funk v. General Motors Corp.*, 392 Mich. 91, 220 N.W.2d 641 (1974). See generally: 41 Am. Jur.2d Independent Contractors § 24 (1968); Annot., 44 A.L.R. 934 (1926). The general rule "is justified on the ground that since the employer of an independent contractor has no control over the prosecution of the work, it would be unjust to hold him liable for the torts of another whom he cannot

---

**5.** SDCL 62–3–10 provides:

A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any one of his subcontractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate, or subcontractor who shall pay compensation under the provisions of this section may recover the amount paid from any person, who, independently of this section, would have been liable to pay compensation to the injured employee. Every claim for compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceeding shall not constitute a waiver of the employee's rights to recover

compensation under this title from the principal or intermediate contractor, but the collection of full compensation from one employer shall bar recovery by the employee against any others, and he shall not collect from all a total compensation in excess of the amount for which any of such contractors is liable. This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

**6.** While case law often refers to the owner of property who has engaged an independent contractor as the "employer," the term as used in our Worker's Compensation Law seemingly excludes the property owner.

direct." *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933, 934 (Alaska 1968).

Conversely, a duty exists as a concomitant of the control retained by the property owner. This exception to the general rule of nonliability is expressed in the Restatement (Second) of Torts, § 414 (1965):

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Comment c to the foregoing section states that the retained control must be such that the contractor is "not entirely free to do the work in his own way."

■ A general supervisory right to inspect work in order to insure its satisfactory completion does not render the property owner liable for the negligence of an independent contractor. *McDonald v. Shell Oil Co.*, 44 Cal.2d 785, 285 P.2d 902 (1955). However, where the owner retains a more significant degree of control, he comes within the scope of § 414. In *Hobbs v. Mobil Oil Corp.*, supra, the defendant hired a contractor (Santa Fe) to work on its premises. By agreement, the contractor exercised exclusive control over the operation and maintenance of the work area where one of its employees was injured. Mobil retained the right, however, to terminate Santa Fe employees and to temporarily suspend the work. In addition, two Mobil supervisors were usually present at the site. The court found that the agreement giving Mobil general supervisory rights, together with the fact that on two separate occasions Mobil employees directed the plaintiff to do certain work, gave rise to a genuine issue of fact concerning retained control.

In the present case, there is evidence that Wheat Growers' employees continually supervised the project. Martin Robinson, a Wheat Growers superintendent, was at the site on at least fifty occasions to monitor the work progress. He had authority, according to his own testimony, to direct the Hartung people in the selection of construction materials. In addition, he stated that he retained the power to alleviate safety hazards at the site. Loren Igo, a Wheat Growers foreman at the Tulare elevator, was at the site on a daily basis and, according to Leonard Mayer and the plaintiff, often instructed the Hartung people on various aspects of the construction. At times, plaintiff testified, Igo personally directed Hartung employees in their work. Further, there were instances when Wheat Growers' employees worked shoulder-to-shoulder with the Hartung men on the construction. Of additional significance is the fact that Wheat Growers retained the right to suspend the operations, just as did the defendant in *Hobbs v. Mobil Oil Corp.*, supra. In *Hobbs*, this right was expressly retained, but never exercised. In the present case, although there was no express retention of that right, Wheat Growers did halt construction during the 1971 harvest to accommodate the increase of grain movement at the elevator.

The work to which plaintiff was assigned was not particularly dangerous as long as he was repairing the floor while standing on the floor itself. However, when the dusty conditions, caused by the owner continuing to move grain within the structure, made it impossible for plaintiff to work inside the grain bin, it became necessary for him to do his assigned task from beneath the floor. At that point, the working conditions became very hazardous and appropriate safety precautions were a necessity. In a similar case, *Womble v. J. C. Penney Co.*, supra, a subcontractor's employee was injured when he slipped on a floor that had been recently waxed by the defendant property-owner's employees. The defendant was held liable for its failure to safeguard against the risk of injury to others arising from its own activity on the premises.

In this case, the trier of fact could find that Wheat Growers knew, or should have known, of the nature and progress of the work being done by its contractor and that their continued use of the elevator to move

grain during its renovation could, in various ways directly affect the working conditions of Hartung's employees. A jury could additionally find that Wheat Growers' officials continually supervised the project and retained such a right of control that Hartung was not entirely free to do the work in its own way.

The burden is upon the movant for summary judgment to show that there is no genuine issue of material fact, and the evidence must be viewed in the light most favorable to the nonmoving party. *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968). Considering the evidence in that vein, we conclude there was a genuine factual issue as to whether Wheat Growers retained sufficient control to impose liability. Having arrived at that conclusion, it is unnecessary to consider the other theories of liability urged by appellant with regard to this defendant. We should not and do not speculate upon what issues, if any, the evidence will render submissible to a jury.

The judgments of the trial court granting motions for summary judgment in favor of defendants P. A. Hartung, I. F. Hartung, and Leonard Mayer are affirmed. The judgment granting the motion for summary judgment in favor of the defendant South Dakota Wheat Growers Association is reversed.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., concurs in part and dissents in part.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I join in affirming the summary judgment in favor of P. A. Hartung, I. F. Hartung, and Leonard Mayer.

I would also affirm the summary judgment entered in favor of South Dakota Wheat Growers. When viewed in the light most favorable to plaintiffs, the evidence does not establish a factual issue regarding retention of control sufficient to impose liability upon Wheat Growers. Without de-

tailing the lack of evidence, suffice it to say in passing that the dusty conditions within the first floor grain bin had nothing to do with the risk to which plaintiff Reinhold Blumhardt was exposed at the time of the accident.