Alois LABER, Plaintiff and Appellant,

v.

Robert KOCH and Northwest Cattle
Company, Defendants and
Appellees.

No. 14977.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1986.

Decided March 12, 1986.

Steven M. Johnson of Brady, Kabeiseman, Reade & Johnson, Yankton, for plaintiff and appellant.

C.E. Light of Light Law Offices, Yankton, for defendants and appellees.

WUEST, Justice.

This is an appeal from a grant of summary judgment in an action for fraud and deceit and negligence in the sale of cattle to appellant. We reverse and remand for trial on the merits.

Appellant, Alois Laber (Laber), has run a farming and cattle-feeding operation near Delmont, South Dakota, since 1955. Appellee, Robert Koch (Koch), is an experienced cattle buyer and is paid a fee, by weight of the cattle purchased, for his cattle-buying services.

In May 1978, at Laber's request, Koch, as an agent for Northwest Cattle Company of Rock Rapids, Iowa, purchased nine hundred fifty-seven head of cattle in Oklahoma, selling them in turn to Laber for approximately $303,000. Laber bought the cattle, intending to fatten them for sale or use them for breeding purposes. Thus, he instructed Koch to buy young, healthy cows, able to do well on feed and to be used as replacements for his breeding stock. Koch represented that the cattle would be in good and healthy condition, free from disease and other maladies, and of a certain weight. When deposed, Koch acknowledged a duty to insure that the cattle were properly dipped in toxaphene to prevent any spread of scabies and properly shipped.

Laber instructed Koch to deliver the cattle to Armour, South Dakota, where the family veterinarians, Drs. T.X. Cox (Cox) and Watson, were to worm, implant and inspect the cattle. According to Laber, the veterinarians found that thirty or forty cows were weak, run down and ill, and several had toxaphene in their lungs. Laber indicated during his deposition that the apparent stress endured by the cattle was unusual. Health certificates and brucellosis test records were produced at Koch's deposition, revealing many of the cattle were old, some ten years of age. Although Koch presented certificates allegedly constituting proof that the cattle had been vaccinated against brucellosis, Laber said that one or more of the cows developed the disease, causing the herd to be quarantined

by the state. Koch further stated that the cattle he sold to Laber were inspected by a licensed veterinarian in Oklahoma to determine their health before they left the sale ring.

After the cattle arrived, Laber called Koch to report that the cattle did not appear healthy. Laber stated that when he informed Koch of his concerns, Koch told him to turn the cattle out in the pasture and they would recover. Laber indicated that while Koch did not tell him that he had to accept the cattle, he felt somewhat obliged to because Koch was "such a qualified order buyer that he should know."

The affidavit of Cox, a certified veterinarian practicing in Armour, alleges that when the cattle were unloaded it was apparent that they were sick due to "an insufficiency of feed ... for a considerable period of time prior to delivery." Cox said that the failure to feed cattle properly between purchase and delivery often results in the cattle digesting their body fat. Further, the digestion of body fat by a cow makes it susceptible to other health problems and prevents the cow from gaining weight properly. Cox stated that neither Laber nor any good cattle feeder could recognize cattle that were feeding on their own body fat and, thus, the permanent impairment to normal growth and weight gain would remain undetected. Cox also stated that, contrary to good practice, the cattle appeared to have been dipped in toxaphene and shipped immediately thereafter. Cattle which are shipped too soon after this procedure can develop a reaction to the substance.

Stan Gerlach (Gerlach), a farmer who also purchased cattle from Koch in 1978, submitted an affidavit stating that the cattle he bought from Koch experienced the same problems as did Laber's cattle. Gerlach alleged that he received cattle that were not of the weight he had anticipated, were sickly, and did not gain weight properly. Both Gerlach and Laber stated that their requests for sales receipts as verification of the weight of the cattle when purchased by Koch were denied.

Thirty of the cows Laber obtained from Koch died during the feeding period and Laber contends that the others did not gain weight properly. Autopsies were performed on the dead cattle revealing toxaphene in their lungs. Laber brought suit against Koch and Northwest Cattle Company, alleging fraud and deceit and an action for negligence. On February 15, 1985, Koch filed a motion for summary judgment, pursuant to SDCL 15–6–56(b), contending that Laber had demonstrated no genuine issue of material fact. The trial court granted the motion, stating in its memorandum decision:

> The plaintiff had his [veterinarian] examine each critter. The plaintiff rejected some that were sick and accepted and paid for those he did receive. The defendant complied with the Oklahoma and S.D. livestock health laws. The plaintiff was an experienced cattleman and was able to determine the age and condition of the cattle. The plaintiff never notified the defendant of any complaints until filing the summons and complaint several years after he sold the cattle, except for one telephone call stating they were not gaining weight.... The court agrees with the defendant that he did not warrant the rate at which the cattle would gain weight or [that they would not] develop any disease or sickness.

We disagree.

SDCL 15–6–56(c) states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We delineated the guidelines for the grant of a motion of summary judgment in *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

(1) Evidence must be viewed most favorable to the non-moving party;

(2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he

is entitled to judgment as a matter of law;

(3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material fact exists;

(4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them;

(5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against movant;

(6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*See also Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241 (S.D.1984); *Nemec v. Deering*, 350 N.W.2d 53 (S.D. 1984). When this court considers a motion for summary judgment, however, "the formal issues presented by the pleadings are not controlling and a party may not rest upon the mere allegations contained therein." *Aetna Life Ins. Co. v. McElvain*, 363 N.W.2d 186, 188 (S.D.1985); *see also Hughes-Johnson Co. v. Dakota Midland Hospital*, 86 S.D. 361, 195 N.W.2d 519 (1972). The nonmoving party must present specific facts which demonstrate a genuine, material issue for trial. *Western Cas. & Sur. Co. v. Gridley*, 362 N.W.2d 100 (S.D. 1985); *Brown Cty. Co-op v. Rasmussen-King Cattle*, 300 N.W.2d 265 (S.D.1980). "Allegations which do not set forth specific facts will not prevent the issuance of a summary judgment." *Western Casualty, supra* at 102; *Peterson v. Rogers*, 347 N.W.2d 580 (S.D.1984); *Lee v. Beauchene*, 337 N.W.2d 827 (S.D.1983).

There is a factual question on the issue of fraud and deceit.* Laber instructed Koch to purchase young healthy cattle. The facts admit, however, that at least three of the cows transported could not make it off the truck. Thirty more died during the feeding period, and several of the cows were revealed to be carriers of brucellosis, resulting in the quarantine of the entire herd for breeding purposes. Many of the cattle purchased were not young and healthy; but, rather, seven to ten years of age, which was not revealed to Laber until after this suit was commenced. Further, the cattle were found by a certified veterinarian to be digesting their own body fat because of lack of feed during shipment. "Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury." *Commercial Credit Equipment Corp. v. Johnson*, 87 S.D. 411, 416, 209 N.W.2d 548, 551 (1973); *Wolfgram v. Dill*, 37 S.D. 282, 157 N.W. 1059 (1916). "Likewise, whether a party relied on the claimed fraud to its detriment is a fact question for the jury." *Commercial Credit, supra*, 209 N.W.2d at 551; *Coman v. Williams*, 65 N.W.2d 377 (N.D.1954). Whether Laber was deceived by Koch or relied on any misrepresentations are some of the factual questions which must be resolved by a jury.

Furthermore, we believe that Laber has sufficiently established a factual question on negligence as a cause of action to withstand a motion for summary judgment. Negligence is the breach of a duty owed to the plaintiff, the proximate cause of which results in plaintiff's injury. *Leslie v. City*

---

\* SDCL 20–10–2 provides:

A deceit within the meaning of § 20–10–1 is either:
(1) The suggestion, as a fact, of that which is not true, by one who does not believe·it to be true;
(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
(4) A promise made without any intention of performing.

*of Bonesteel,* 303 N.W.2d 117 (S.D.1981); *Johnson v. Straight's, Inc.,* 288 N.W.2d 325 (S.D.1980); *Blumhardt v. Hartung,* 283 N.W.2d 229 (S.D.1979). When deposed, Koch acknowledged a duty to insure that the cattle were properly dipped in toxaphene and properly shipped. Thus, we have the establishment of duty. Whether Koch breached that duty and whether his breach resulted in injury to Laber are questions for the jury.

Summary judgment is generally not feasible in negligence actions because the standard of the reasonable man must be applied to conflicting testimony. *Lalley v. Safway Steel Scaffolds, Inc.,* 364 N.W.2d 139 (S.D.1985); *Myers v. Lennox Co-op Assn.,* 307 N.W.2d 863 (S.D.1981); *see also, Wolf v. Graber,* 303 N.W.2d 364 (S.D.1981); *Hurney v. Locke,* 308 N.W.2d 764 (S.D. 1981); *Hunt v. Briggs,* 267 N.W.2d 566 (S.D.1978). "A genuine issue of fact exists where, on the basis of facts in the record, reasonable minds could differ on whether defendant's conduct measures up to the required standard." *Nemec, supra* at 56 (*citing Jackson v. Dabney,* 645 P.2d 613, 615 (Utah 1982)). We do not believe Laber's claim of negligence is a sham, frivolous, or so unsubstantial that it is obvious a trial on the merits would be futile.

Accordingly, we reverse and remand for trial.

FOSHEIM, C.J., MORGAN, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs in part and dissents in part.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in part; dissenting in part).

## FRAUD AND DECEIT

Concerning the fraud and deceit action, plaintiff has pleaded a cause of action and

the affidavits and deposition of plaintiff demonstrate a genuine issue of material fact. Therefore, I concur as to that aspect of the majority opinion.

## NEGLIGENCE IN SALES?

Regarding the alleged cause of action for negligence, I am totally perplexed as to the pleader's basis for an action sounding in negligence. Koch bought the cattle in Oklahoma from divers persons at a sales ring. Laber then purchased the cattle from Koch. Is the pleader attempting to avoid pleading a cause of action in warranty or breach of contract? Now, indeed, if Koch was acting as an agent or broker for Laber, in dipping the cattle in Oklahoma and shipping them to South Dakota, perhaps the pleader has in mind a violation of some agency or brokerage agreement. The alleged improper dipping and shipping of the cattle very well could be an element of damage in fraud and deceit. However, Laber and Koch had a buyer-seller relationship or a principal-agent relationship and this alleged cause of action for negligence must hypothetically groove into some particular business relationship, per Laber's advocacy.

Is Laber contending that Koch was negligent in selling cattle to him? If so, this is the birth of an innovative concept in the law of sales, I hazard. Under SDCL ch. 57A-2, the statutes pertaining to the law of sales permit no such recovery for negligence in purchasing goods from the seller. No perusal of the entire chapter will support such a theory. There are remedies such as breach of warranty, specific performance, fraud, rescission, replevy, and breach of contract.[1] To plead negligence, however, such as we have here, is off the conceptual wall. Negligence on wrongs, in sales, is not in the statutes.

Plaintiff's pleading on negligence is skeleton like. It realleges all the cause of

---

1. SDCL 57A-2-711 provides for buyer's remedies in general. SDCL 57A-2-713, -714 provides for buyer's damages for breach including *accepted* goods. *See* collected cases under Annotations.

action on fraud and deceit. Then, the pith of the cause of action pleaded is as follows:

That the Defendants were negligent in their care, transportation and selection of the livestock purchased by them to be sold and furnished to the Plaintiff, as aforesaid, which negligence was the proximate cause of some of the Plaintiff's cattle dying, others contracting "Bangs disease", and others not being of proper weight at the time furnished to the Plaintiff.[2]

It strikes me that there are dual or overlapping damages sought, for these allegations pertain to damages provable in the fraud and deceit count. Please note, immediately above, that the pleader for the plaintiff extends a charge of negligence to Koch in not only negligently dipping and transporting the livestock but also negligently purchasing the livestock. Therefore, was Koch acting as an agent for Laber; or, did Koch buy the cattle outright and then Laber buy the cattle from Koch? In this business relationship between Laber and Koch, after the purchase of the cattle in Oklahoma by Koch, a bailment might well have arisen. Under a bailment, Koch would have owed a duty to safely care for the cattle entrusted unto him. No bailment violation has been pleaded.

## FOR WHOM DO WE WRITE?

An appellate writer. For whom does he write? The academe? Law of the case? To follow precedent? For future legal generations? To pave the way for new legal precedent—new concepts? To teach? To give guidance to the trial court? To stimulate the Bar and Bench into a healthy, vibrant intellectual alliance thereby avoiding the humdrum of legal thought? As Justice Douglas wrote: "to prick the bubble of contemporary dogma"? To engender interest of law students? To decide the case—establishing the litigant's rights? To reannounce a fundamental rule of law? To repudiate old doctrine, hoary with age, no longer sound because of social and tech-

nological change? Here, it is hoped that my musings would cause the negligence count to disappear; and that counsel, like thirsty deer which long for a babbling brook, would eagerly seek repose. Repose in the applicable law. Donning the role of the teacher that this case would crystalize into sound theory, it is suggested that a seller of diseased livestock may be held liable to the buyer for a loss of productivity which results in lost profits. Expenses attendant thereto are likewise recoverable. See Kaufman v. Van Santen, 696 F.2d 81 (8th Cir.1983); W & W Livestock Enterprises, Inc. v. Dennler, 179 N.W.2d 484 (Iowa 1970); Bemidji Sales Barn v. Chatfield, 312 Minn. 11, 250 N.W.2d 185 (1977). But the right groove must be found. Breach of warranty is addressed by these cases.

## STATUTE OF LIMITATIONS

Plaintiff is putting on some fancy pleading moves. There is no implied warranty on the sale of cattle that they are free from disease. SDCL 57A–2–316.1. Plaintiff's pleading gate is shut here. However, there can be an express warranty that they are disease free or would be; here, Koch represented the cattle to be free from disease. The statute of limitations on breach of warranty actions is four years. SDCL 57A–2–725. Plaintiff's pleading gate is still shut. So now enter a fraud theory. The statute on fraud actions is six years. SDCL 15–2–13. Laber purchased the cattle from Koch in May 1978, and filed suit on May 3, 1984. Thus, it appears the fraud action was just under the wire and any warranty action was barred. No doubt this is why negligence is pleaded as a Second Cause of Action instead of breach of warranty.

## CONCLUSION

As I am unable to conceptually attach myself to the negligence theory, and inasmuch as the trial judge granted the motion

---

2. Under SDCL 57A–2–715, pertaining to buyer's incidental and consequential damages, all pertaining to breach, not negligence, inspection—receipt—transportation, are proper damage by way of expenses.

for summary judgment and entered a summary judgment against plaintiff on the negligence cause of action, I would sustain the trial court as there is no genuine issue as to any material fact thereon and the moving party, Koch, is entitled to a judgment as a matter of law on the negligence count. SDCL 15–6–56(c). The trial judge did not dismiss the action on the pleadings nor address it by piercing the theory behind the two counts alleged; notwithstanding, this Court can sustain him under the rationale of *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118 (S.D.1985); *Staab v. Cameron*, 351 N.W.2d 463 (S.D. 1984); *Ruple v. Weinaug*, 328 N.W.2d 857 (S.D.1983); and *Cook v. Rezek*, 296 N.W.2d 731 (S.D.1980); namely, the trial court was right in granting summary judgment but for the wrong reason.