BENTZ, Respondent v. CIMARRON INSURANCE CO., Inc., Appellant

(114 N.W.2d 96)

(File No. 9942. Opinion filed March 27, 1962)

**Francis J. Parker** and **D. O. Dillavou,** Deadwood, for Defendant and Appellant.

**Thomas G. Wall,** Sturgis, **E. W. Christol,** Rapid City, for Plaintiff and Respondent.

HANSON, J.   This is an action to recover damages for loss of an alfalfa crop on an alleged contract of insurance. Two trials were had. The jury disagreed on the first and rendered verdict for plaintiff in the amount of $9,595 on the second. Plaintiff's motion for new trial having been refused and judgment having been entered on the verdict, this appeal by the defendant insurer followed.

■  Defendant questions the sufficiency of the evidence to sustain the verdict. In this regard, we may examine the record to determine only whether there is any competent and substantial evidence to support the verdict. In doing so we are obligated to resolve all conflicts in the evidence, and to draw all reasonable inferences arising therefrom, favorable to the prevailing party.

Briefly summarizing the evidence in such light it appears that the plaintiff, Carlos W. Bentz, is a farmer living near Newell, South Dakota. For many years his insurance needs were handled by Guy H. Hemminger of Deadwood. Hemminger represented several different insurers including the defendant Cimarron Insurance Company. In 1955 plaintiff had a crop of alfalfa growing on 60 acres of irrigated land which he intended to harvest for seed. On August 25th he went to Mr. Hemminger's office to obtain insurance on said crop and requested coverage against loss by fire, wind, and hail. The value of the crop was determined to be $12,600 computed on the basis of 7 bushels of seed per acre at $30 per bushel. Hemminger made and filed a written notation of such crop valuation. Because plaintiff wanted the crop insured while in the field Hemminger said it would be necessary to take it up with some companies and he would notify plaintiff when covered and would bill him for the premium. On September 8, 1955 plaintiff re-

ceived a letter from agent Hemminger which plaintiff regards and refers to as a "binder". The pertinent part of the letter which was marked and received into evidence as Exhibit 2 reads as follows:

"The other company from whom I ordered the coverage for the growing seed crop in the amount of $12,600.00 has acknowledged my letter and they have accepted binder from August 25th, 1955 to December 1st, the end of the season and the end of the policy year. This coverage covers the crop only while it is in the open and coverage ceases immediately when it is stored in a building either temporarily or permanently. The rate on this is $.20 per hundred for the period and the premium would be $25.20. This Company has also requested the necessary information to complete the binder. This information is the same as requested in the first paragraph.

"When we get all this information we will bill you for the premium and send you the policies. You are now covered."

On September 28th the alfalfa crop was severely damaged by wind and hail and plaintiff made oral and written proof of loss, and furnished the legal description of the land requested in the "binder" letter. The actual policy of insurance was not issued by defendant until October 5, 1955. It was countersigned by agent Hemminger on October 17, 1955. The policy period was stated to be from August 25, 1955 to October 25, 1955 and loss on cut or uncut grains by windstorm and hail was limited to grain in buildings.

Defendant denied liability contending the only peril talked about and the only peril insured against either under the so-called "binder" or its policy was loss by fire. The evidence on this point is sharply conflicting. This issue was submitted to the jury and determined adversely to defendant.

■ As there is competent evidence in the record to sustain the verdict based on conflicting evidence, the same is conclusive on appeal in the absence of some error at law occurring during the trial. In this respect, defendant urges that the trial court erred in rejecting Exhibits A-10, A-14, and A-15. These exhibits are all letters written or received by defendant's witness, and agent, Guy H. Hemminger.

■ Exhibit A-10 is a copy of a letter written by agent Hemminger on July 21, 1955, and addressed to the Fritz A. Forseth Company, Aberdeen, South Dakota. The Forseth Company had no connection with the defendant insurer and the final offer of this exhibit was withdrawn by defendant. As there was no final ruling with reference to this exhibit no error could be predicated thereon.

Exhibit A-14 is a copy of a letter written by agent Hemminger on September 2, 1955 addressed to the defendant's divisional office in Minneapolis, as follows:

"I have a party, Mr. Carlos Bentz of 842 Main Street, Deadwood who asked me to write his fire insurance on his growing alfalfa crop which he is leaving for seed. He was in on August 18th from his farm one mile north of the Arpan Store in Butte County, South Dakota where he has 60 acres of alfalfa. He wanted this insurance to be in effect for thirty days from August 25th to September 25th at which time he expects to have the crop in the stack. He was to send in the legal description of the land where this crop is located but to date he has not sent it in. He and his family are living temporarily on the farm and I have not seen him in town.

"He estimated his yield to be 7 bushels per acre or 420 bushels from the 60 acres at $30.00 per bushel or a total of $12,600.00. I do not know how you figure this premium, do you use the 'Specific on cut or uncut' Acreage plan—fire only

at .$.20 per $100.00 per month with a minimum term of two months?

"I would like you to advise me on this and I will try to get the description of the land in the meantime. I do not know if you can put a binder on this with the above information or not. Advise if you can."

Exhibit A-15 is the original letter dated September 6, 1955 received by agent Hemminger in response to Exhibit A-14 from defendant. It is signed by D. D. Sewell, Special Agent. It reads as follows:

"Receipt is acknowledged of your letter dated September 2, 1955 and we hereby accept binder from August 25th, 1955 covering 60 acres of alfalfa grown for seed on land (description to follow) on land located one mile north of the Arpan Store in Butte County, So. Dak. in the amount of $12,600.

"Please be sure to advise your customer that Specific insurance on cut or uncut grain under the Acreage Plan covers the crop only while it is in the open and coverage ceases immediately when it is stored in a building either temporarily or permanently. This coverage cost 20¢ per $100. of coverage for the season which, in any event, expires December 1st of the policy year.

"The top bracket on the enclosed cards—Cut or Uncut Grain—covers the grain both in the field and in temporary storage on the farm. Coverage ceases when the grain is stored in a commercial grain elevator or railroad car.

"We will appreciate receiving the necessary information to complete this binder. You received a supply of our short term grain policies last month and could issue this policy in your office. Thanks for your co-operation."

Agent Hemminger testified the rejected letters were written or received by him in the regular course of his business as an insurance agent and all related to his efforts to procure the insurance requested by plaintiff. Despite the hearsay character of such correspondence defendant contends the same was properly admissible in evidence under our Uniform Business Records as Evidence Law, SDC 1960 Supp. 36.1001, which provides as follows:

"The term 'business', shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

"A record of an act, condition, or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.

"This section may be cited as the Uniform Business Records as Evidence Act."

In the case of Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250, 253, this court pointed out that the common law rules relating to books of account and business records became so burdensome relief was sought in this state by the enactment of the Uniform Business Records Act which, in effect, "enlarges the operation of the business records exception to the hearsay rule."

■ The Business Records Act is based on the premise that entries and memoranda made in the regular course of business contemporaneously with an act, condition or event are circumstantially trustworthy having been made before any issue arises and before any motive to misrepresent occurs. To effectuate its purpose the act should be liberally construed. As stated in the case of Allen v. St.

Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R.2d 1022, "To construe the act too strictly would be to repeal it". Letters, inter-office memoranda, and the memorandum of a telephone conversation by a bank employee, have all been admitted, as business records, under similar acts by other courts. In re Potlatch Forests, 72 Idaho 291, 240 P.2d 242; Henderson v. Allis-Chalmers Mfg. Co., 65 Idaho 570, 149 P.2d 133; and United States v. Moran, 2 Cir., 151 F.2d 661.

■ Not every written memorandum, letter, or report, however, is admissible under the act simply because it was made or rendered in the conduct of some business. In the case of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, a railroad engineer's report of an accident was held to be inadmissible under the federal statute as not being a record made in the regular course of business. In an opinion by Justice Douglas the court said that such employees' "reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading". Similarly, copies of letters written by physicians who examined the plaintiff to the railroad's chief medical examiner were excluded in the case of Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793. Also, in the case of Fuller v. White, 33 Cal.2d 236, 193 P.2d 100, Rehearing 201 P.2d 16, a letter from the home office of an insurance company, dated October 25, 1945, signed by its supervisor of claims and addressed to its general agent in San Francisco was held to be inadmissible under the act because the letter merely stated an opinion and conclusion of company records made in 1932 and no circumstantial guarantee of trustworthiness existed as to an account of a record by an employee made many years after the event.

The proponent of a purported business record must show by the custodian of the record or other qualified

witnesses (1) that it is, in fact, a record of an act, condition, or event, (2) it is relevant to the issues, (3) its identity and mode of preparation, and (4) that it was made in the regular course of business, at or near the time of the act, condition, or event. The trial court is then vested with discretion to determine if, in its opinion, "the sources of information, method, and time of preparation are such as to justify the admission of such record in evidence. Its rulings, in this regard, will not be disturbed on appeal in the absence of a manifest abuse of discretion. Cascade Lumber Terminal v. Cvitanovich, 215 Or. 111, 332 P.2d 1061; Northwestern Improvement Company v. Norris, N.D., 74 N.W.2d 497.

■ In our opinion the trial court abused its discretion by refusing to admit the letters marked Exhibit A-14 and A-15 in evidence. They were an integral part of the insurance transaction involved and were explanatory of the "binder" letter marked Exhibit 2 which did not itself indicate the "peril" insured against. Such letters were written and received in the regular course of business and their identity, mode and time of preparation were sufficient to justify their admission. Their evidentiary weight, of course, was for the jury. In this regard, we cannot escape the further conclusion that the defendant was prejudicially handicapped in the presentation of its case to the jury by the exclusion of such letters from its consideration.

■ Reversed but without taxation of the cost of appellant's brief as, contrary to our rules, the same unnecessarily includes over 45 pages of testimony duplicative of the transcript.

RENTTO, P. J., and ROBERTS and SMITH, J. J., concur.

BIEGELMEIER, J., concurs in result.