LeCLAIRE, Appellant v. HOVEY, Respondent

(237 N.W.2d 895)

(File No. 11595. Opinion filed January 15, 1976)

**Wally Eklund** of **Johnson, Johnson & Eklund**, Gregory, for plaintiff and appellant.

**William Wernke** of **Herman & Wernke**, Gregory, for defendant and respondent.

DUNN, Chief Justice.

This is an appeal from a jury verdict in Gregory County of the Sixth Judicial Circuit of South Dakota. Plaintiff had sought damages for personal injury and property damage in the amount of $12,500, and was awarded a verdict of $1,250. Plaintiff appeals from the judgment[1] on the grounds that (1) the jury verdict of $1,250 was grossly inadequate, and (2) the court committed pre-

---

1.  Plaintiff assigns as error the lower court's order denying a new trial. While we find in the record a motion for a new trial, we can find no written order of the court denying the motion. We also note that in plaintiff's notice of appeal he makes no mention of the order denying a new trial in spite of the fact that he assigns it as error. Therefore, we will disregard plaintiff's assignments of error as they relate to the alleged denial of a new trial and will consider the appeal as being solely from the judgment of the trial court.

judicial error in permitting a letter from Dr. Giebink in evidence. We affirm.

This lawsuit resulted from an automobile accident which occurred on October 30, 1972. Both vehicles involved were traveling west on U.S. Highway 18, approximately two miles east of Burke, South Dakota. The road was slushy in some spots. Both defendant and plaintiff were alone in their respective vehicles. The defendant in attempting to pass plaintiff's vehicle collided with the left front fender of plaintiff's car. Plaintiff's car slid off the road into the ditch and then proceeded backward up a railroad embankment before settling back down into the ditch. Plaintiff did not appear to be hurt at the accident scene, but a passing motorist prevailed upon him to go to the Burke hospital. He subsequently developed a stiffening in his neck and was kept in the Burke hospital for two days.

Plaintiff presents two arguments which he feels require that this court reverse for a new trial. His first argument is that the jury verdict of $1,250 was grossly inadequate and was given under the influence of passion and prejudice. His second argument is that the court erred in admitting into evidence an exhibit which was inadmissible hearsay and which greatly prejudiced his case.

We turn first to plaintiff's argument that the damages awarded by the jury were grossly inadequate and influenced by passion and prejudice. The record does reveal that plaintiff did have some uncontroverted evidence of damages. He introduced a doctor bill from his physician, Dr. Sweet, in the amount of $35.60. He also introduced a bill from the Burke hospital for $119.30. As to the damage to his car, a 1966 Ford stationwagon plaintiff testified that it was worth $500 prior to the accident and he admitted that he sold the car for $150 after the accident, making his loss $350. At this point plaintiff's proven damages total only $504.90.

Plaintiff contends, however, that his neck was seriously injured in the accident. At trial he read into evidence the deposition of his own physician, Dr. Sweet, and introduced the deposi-

tion of Dr. James Jackson of Yankton. Dr. Jackson is an orthopedic specialist. The medical diagnosis of both doctors was that plaintiff suffered a flexion-extension injury to his neck as a result of the accident. This is an injury which in layman's terms is commonly called a "whiplash." Dr. Jackson testified that plaintiff had a ten percent disability of his neck. Plaintiff also sought damages for loss of earnings, claiming that he had to quit his job because of his injuries. The record shows that he was employed by the Rosebud Sioux Tribe and his job entailed a great deal of driving. He alleged that his neck injury precluded him doing any long-distance driving.

Defendant introduced evidence which tended to show that plaintiff's injury was relatively minor. Among the evidence which was put in evidence was a letter from an orthopedic specialist which concluded that, "I did not find anything very remarkable wrong with him." More will be said about this letter in the second part of this opinion. The jury was made aware of the fact that plaintiff's total hospitalization resulting from this accident was only two days. The jury also knew that at the time of the accident the plaintiff was sixty-eight years of age and this could have caused it to reduce the damages awarded for plaintiff's alleged permanent, partial disability to his neck. And, of course, as we recently pointed out in Kamp Dakota, Inc. v. Salem Lumber Company, Inc., 1975, 89 S.D. 696, 237 N.W.2d 180, the jury need not believe any or all of the testimony of an expert witness. Here they need not have believed Dr. Jackson's estimate that plaintiff had a ten percent disability of his neck. As to the loss of income, the jury could have decided that plaintiff's injury was not related to his quitting his job or that plaintiff could have found some other suitable employment.

■Viewing the record as a whole, we cannot say that the verdict of the jury was so grossly inadequate as to merit a new trial on the issue of damages. The jury heard the evidence and arrived at a verdict of $1,250. We must presume in the absence of any evidence to the contrary that the jury was comprised of fair-minded persons and that it was not influenced by passion or prejudice. Davis v. Holy Terror Mining Company, 1906, 20 S.D. 399, 107 N.W. 374.

Plaintiff next challenges the admissibility of one of the pieces of evidence introduced by the defendant. It appears that before consulting Dr. Jackson in Yankton, the plantiff was examined by Dr. Robert Giebink, an orthopedic specialist from Sioux Falls. Dr. Giebink wrote a consultation letter to Dr. Sweet indicating that his examination of the patient was premature; "He has scarcely had time for any normal bruise or contusions to heal." However, the letter did contain this conclusion which was objected to by the plaintiff: "I did not find anything very remarkable wrong with him." Dr. Sweet kept the letter and made it a part of plaintiff's medical file. Defendant was made aware of this letter during the discovery process and sought to have it introduced at trial. The letter, with certain portions which referred to plaintiff's attorney deleted, was allowed into evidence by the court.[2]

2. ROBERT R. GIEBINK, M.D.              PHONE 336-2638, DAY OR NIGHT
H. PHIL GROSS, M.D.                          AREA CODE 605
RICHARD F. NICE, M.D.                   E. E. HANSSEN, BUS. MGR.
FRANK G. ALVINE, M.D.

ORTHOPAEDIC ASSOCIATES, LTD.

*Orthopaedic Surgery*
*Diseases of Bones and Joints*
SUITE 102, 1200 EUCLID AVENUE
SIOUX FALLS, S. DAK. 57105
8 December 1972

Ed Sweet, M.D.
Burke
South Dakota
Re: Phillip LeClaire
Dear Ed:
   He has scarcely had time for any normal bruise or contusions to heal. I really see no indication for us to see him.
   I did not find anything very remarkable wrong with him.
   Mr. LeClaire will be coming back to see you and maybe you will have better success getting him to loosen up than I have, but I didn't really see anything in the x-rays and I really don't think that he should have to wear this collar too much longer. He does strike me as having a little limited neck motion and he certainly could have had a neck injury from the sound of the accident, but it has had adequate time to heal and I think now it is a question of getting it limbered up and getting the muscles back in shape.
Best regards.
Sincerely yours,
(s) Robert R. Giebink, M.D.
ORTHOPAEDIC ASSOCIATES, LTD.
RRG/mr
Enclosure
Contrary to an assertion made by counsel during oral argument, the unexpurgated letter from Dr. Giebink does not appear in the official record, although it was set out in appellant's brief.

Plaintiff contends that this letter was inadmissible hearsay and should not have been admitted into evidence. While it is true that the letter is hearsay, that fact alone does not automatically make it inadmissible. Over the years several exceptions have been made to the hearsay rule. One exception allows for the admission of business records, even if the records themselves would otherwise constitute hearsay. This exemption is statutory in South Dakota and is found at SDCL 19-7-11:

> "The term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

> "A record of an act, condition, or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.

> "This section may be cited as the Uniform Business Records as Evidence Act."

We hold that the letter from Dr. Giebink to Dr. Sweet was admissible under SDCL 19-7-11 as a business record. It was a recording of Dr. Giebink's professional opinion of the plaintiff's condition, made at or near the time of his examination of the plaintiff. The letter was sent in the regular course of business to Dr. Sweet and was made a part of plaintiff's medical record. As custodian of the record, Dr. Sweet testified at the trial and established the foundation for its admissibility. In Falcone v. N. J. Bell Tel. Co., 1967, 98 N.J. Super. 138, 236 A.2d 394, the court considered the same Uniform Business Records as Evidence Act as it applied to medical records. We agree with that court when it stated:

> "On principle, the reasoning which justifies the admission of laboratory and X-ray reports contained in a

hospital record equally supports the admissibility of a medical diagnosis made by the treating physician. Such a diagnosis is no more than the opinion of a scientific expert (here a doctor of medicine) who has examined the patient, heard his statement and observed his symptoms." 236 A.2d at 399.

See also Glawe v. Rulon, 8 Cir., 1960, 284 F.2d 495.

Further, we do not find the letter to be so prejudicial as to be fatal to the plaintiff's case. It was a preliminary opinion given very shortly after the accident and at a time when it was difficult to ascertain any permanent limitation of the neck because of normal bruises and contusions from the accident, and the letter so states. The jury had the testimony presented by Dr. Sweet and Dr. Jackson before it also, and it was the jury's prerogative to resolve any conflicts of testimony and to make a determination as to the extent of plaintiff's injury. Accordingly, we hold that the court did not err in admitting Dr. Giebink's letter into evidence.

By this holding we do not mean to imply that a physician's letter stating his conclusions about a patient's condition will always be an acceptable substitute for the physician's sworn testimony, either by way of deposition or in open court. In the instant case the plaintiff himself consulted Dr. Giebink about his symptoms. We have no doubt that had Dr. Giebink's diagnosis been more favorable to plaintiff's case, his deposition would have been taken by plaintiff's attorney and it would have been presented at the trial. Since his diagnosis was not favorable, the consultation letter to Dr. Sweet was simply added to plaintiff's medical records and plaintiff made no attempt to depose Dr. Giebink. Defendant discovered the letter by accident while conducting his pretrial discovery. Defendant did not ask Dr. Giebink to examine plaintiff nor did he have anything to do with the letter being placed in plaintiff's medical file. It is on the basis of these facts alone that we uphold the circuit court in this evidentiary ruling.

Having found that the court did not abuse its discretion and that the defendant's exhibit was properly admitted we affirm the

judgment of the trial court.

WINANS, DOYLE and COLER, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

Because I do not believe that a letter setting forth one doctor's medical opinion regarding the condition of a patient and sent to another doctor is the type of record the admission of which the Uniform Business Records as Evidence Acts, SDCL 19-7-11, was designed to facilitate, I would hold that the trial court erred in admitting Dr. Giebink's letter. See Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250; Bentz v. Cimarron Insurance Co., 79 S.D. 510, 114 N.W.2d 96; Plank v. Herigs, 83 S.D. 173, 156 N.W.2d 193; Olson v. Aldren, 84 S.D. 292, 170 N.W.2d 891.

I would adopt the following statement, made with respect to letters written by physicians setting forth their findings and conclusions concerning an allegedly injured plaintiff:

" * * * Moreover they were not confined to a record of objective acts, conditions, transactions, occurrences or events which took place at or near the time of recording, as the statutes require. For in addition to statements of the observed condition of the plaintiff they contain many facts relating to his prior history, apparently given by him to the writers, as well as the writers' subjective findings and conclusions. The cited statutes clearly do not authorize the admission of unsworn statements, such as these, made by a physician to a third party giving his opinion as to the condition of a patient whom he has examined. It is incumbent upon a party who desires to put such an opinion in evidence to call the physician as a witness at the trial or take his deposition if otherwise permissible." Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793, 796.

For cases indicating that portions of written records which are merely diagnostic or expressive of opinions or conclusions of

doctors are not admissible, see Hussein v. Isthmian Lines, Inc., 5 Cir., 405 F.2d 946, 948. See also Boland v. Jando, Mo., 395 S.W.2d 206; McCormick on Evidence (2d Ed. 1972) § 313.