## UNITED STATES FIRE INSURANCE COMPANY, Plaintiff and Appellee,

v.

## Troy DACE, Defendant and Appellant.

### No. 13137.

Supreme Court of South Dakota.

Argued Feb. 13, 1981.

Decided April 29, 1981.

Rehearing Denied May 22, 1981.

Gerald L. Reade of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellee; Steven M. Johnson of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, on the brief.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant; Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on the brief.

HENDERSON, Justice.

## ACTION

This is an appeal by Troy Dace (appellant) from a judgment entered pursuant to a jury verdict rendered in favor of United States Fire Insurance Company (appellee). Appellee instituted an action for declaratory judgment contending that appellant was not entitled to recover $50,000 under a fire insurance policy issued to him by appellee. Specifically, the jury found that appellant had violated the terms of the policy by setting, or causing to be set, the fire which destroyed the insured building. We affirm.

## FACTS

The insured building, destroyed by fire, was purchased on a contract for deed by appellant in May of 1978 from Amby Friel and his wife, Margaret Friel. Prior to that time, appellant had been leasing the building from the Friels. As a part of the purchase agreement, appellant was required to insure the building to protect the Friels' interest. Appellant complied by purchasing a $50,000 fire insurance policy from appellee in May of 1978 with a proper loss-payable clause for the Friels. According to an insurance agent employed by appellee, appellant had, however, originally requested a policy of $110,000. Appellant testified at trial that the building had been appraised at $55,000 to $60,000.

At the time of this purchase, appellant was using the building for a nightclub, pawn shop, and bookkeeping/tax consultation service. In October of 1978, appellant leased the nightclub portion of the building to Mark and Judy Javersak. The Javersaks originally purchased a $110,000 insurance policy on their portion of the building, including its contents. When the Javersaks bought the nightclub, the contents therein were owned by appellant; hence, appellant wanted them insured in his name, since the Javersaks did not really own the contents of the nightclub, but were merely making periodic payments on them. Accordingly, if a fire occurred, appellant would sustain a substantial loss as, for all practical purposes, he still owned the nightclub and its contents. Approximately two weeks prior to the fire, an additional $20,000 insurance was placed on the building and its contents by the Javersaks. Appellant was named the insured on the resulting $130,000 policy.

During the early morning hours of January 28, 1979, the building in question caught fire and was destroyed. Appellant, on the night of January 27, 1979, had gone to a movie and dinner in Rapid City, South Dakota, with Brett Horr, whom appellant had recently met while performing as a sharpshooter for students at Sturgis High School. Horr was approximately 14 years old at this time. The two returned to appellant's trailer home in Spearfish, South Dakota, at approximately 1:00 a. m. on the 28th of January, 1979, and thereafter retired to separate bedrooms.

Patricia Hoffman, a waitress who was working in a diner near the building, testified that she called appellant at approximately 6:00 a. m. on January 28, 1979, and told him "your place is on fire." According to Hoffman, appellant stated he would be right down, that being the extent of the conversation.

Appellant testified that when Hoffman called, he put the telephone receiver down and checked to see if his trailer was on fire; he also looked in on Horr, but did not wake him at this time. Appellant further testified that he stepped outside the trailer,

while still talking on the telephone via an extension cord, to again check to see if his trailer was on fire. According to appellant, after realizing that it was the nightclub/pawn shop/tax building which was ablaze, and still not dressed, he wakened Horr. Appellant testified that while Horr was dressing, he went out and started his pickup truck to warm it up, then came back in. He and Horr subsequently drove to the fire.

Horr, on the other hand, testified that when appellant awoke him, appellant was fully dressed (including a coat) and it was wet where appellant had been standing. Furthermore, Horr testified that when he and appellant left the trailer, he noticed a trace of snow on the ground which was not present when the two had arrived at the trailer.[1] Horr testified that, while there was snow on the other surrounding vehicles, there was no snow on appellant's pickup truck. Additionally, Horr testified that he was positive appellant's pickup truck was not running when he and appellant entered it. The heater of the pickup truck came on in five to ten seconds, Horr testified, even though he thought the temperature outside was approximately 0° fahrenheit. According to Horr, the tire tracks of the pickup truck indicated that it had left the trailer, returned, then left and returned again.

Subsequent to the fire, appellee paid Margaret Friel approximately $51,000 for the damage done to the insured building, and assumed appellant's contract for deed (permissible if arson is suspected) to avoid paying appellant due to appellee's belief that appellant had committed arson. Appellee then commenced this action by seeking a declaratory judgment against appellant.

## ISSUES

### I.

Was there sufficient circumstantial evidence presented to the jury to support its verdict? Our holding is yes.

### II.

Did the trial court err by receiving into evidence certain out-of-court statements made by appellant as exceptions to the hearsay rule? Our holding is no.

### III.

Did the trial court err by receiving into evidence the non-expert opinion testimony of Brett Horr? Our holding is no.

## DECISION

### I.

■ Appellant contends that the evidence was insufficient to support the jury's verdict. Upon this Court's review of the sufficiency of the evidence on appeal, the evidence and the inferences therefrom are viewed in the light most favorable to upholding the verdict of the jury. *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979); *Engberg v. Ford Motor Company*, 87 S.D. 196, 205 N.W.2d 104 (1973). If, when so viewed, there is competent and substantial evidence to support the jury verdict, then it must stand. *Olesen v. Snyder*, supra; *Vander Vorste v. Northwestern National Bank*, 81 S.D. 566, 138 N.W.2d 411 (1965); *Bentz v. Cimarron Insurance Co.*, 79 S.D. 510, 114 N.W.2d 96 (1962).

■ Appellee relied solely upon circumstantial evidence as a basis for proving that appellant committed arson. Proof of arson may be established, however, by circumstantial evidence. *Raphtis v. St. Paul Fire & Marine Insurance Company*, 86 S.D. 491, 198 N.W.2d 505 (1972); *Quast v. Prudential Property & Cas. Co.*, 267 N.W. 2d 493 (Minn.1978). Appellee was required to prove by a preponderance of the evidence that appellant caused the building to burn. *Raphtis v. St. Paul Fire & Marine Insurance Company*, supra; *Quast v. Prudential Property & Cas. Co.*, supra.

1. Stuart Reed, who works at the co-op weather station ¼ mile from the trailer court where appellant lives, testified that on the night of the fire a trace of precipitation had fallen.

The jury was presented with two questions: 1) Was appellant's building deliberately set on fire on January 28, 1979?; and 2) Did appellant set, or cause to be set, the fire?

Regarding the evidence that the fire had been intentionally set, the following factors were presented to the jury at trial:

William R. Dietz, a chemist with the United States Department of Treasury, Bureau of Alcohol, Tobacco, and Firearms, deposed that, based on a sample of what appeared to be charred wood taken from the remnants of the fire, the debris contained an accelerant. An accelerant is a volatile hydrocarbon mixture such as gasoline or kerosene. Dietz further deposed that in his opinion the fire was not caused by faulty wiring. This statement was based upon his observations of wire samples and electrical junction boxes that were removed from the building after the fire. The expert opinion of Dietz was that the fire had been started with the aid of an accelerant.

Deputy State Fire Marshall Alvin L. Plumb testified that, in his opinion, the fire was a result of arson. Plumb based his conclusion in part upon the fact that the entrance to the building was not forcibly opened, yet the Javersaks stated that they had locked the building around 1:00 a. m. the night of the fire. Additionally and more importantly, Plumb stated that he could find no physical evidence of the fire starting by itself.

Only 3 guns were found in the debris, even though appellant had told investigators that there were 39 guns in the building. Finally, State Fire Marshall Joe Egger testified that, in his opinion, the fire was a product of arson. There was no expert testimony to the contrary.

Next, concerning the sufficiency of evidence that appellant had set the fire or caused it to be set, in *Raphtis v. St. Paul Fire & Marine Insurance Company, supra,* we held that evidence of the insured's "shaky" financial condition at the time of the fire was sufficient to prove motive for arson. Furthermore, circumstantial evidence is permissible as a means to support an inference that the insured set the fire or arranged to have it set. *Quast v. Prudential Property & Cas. Co., supra.* The Minnesota Supreme Court in *Quast* also held that evidence revealing heavy indebtedness of the insured was sufficient to establish a motive of the insured to commit arson, even though the insurer failed to demonstrate that the insured knew of or participated in the arson.

Here, the jury was presented with the following evidentiary factors on the question of whether appellant was responsible for the fire:

Brett Horr testified that, in his opinion, appellant's pickup truck had been moved sometime during the night of the fire.[2] The pickup truck's movement, Horr testified, was indicated by its numerous tracks, lack of snow accumulation, and the almost immediate functioning of its heater when he and appellant drove to the fire.

Mark Javersak testified that appellant had told him that he (appellant) could reach any area of the building through a false ceiling. Javersak also testified that his former employee, who was also an acquaintance of appellant, had a key to a portion of the building being rented by the Javersaks.

Appellant was experiencing financial difficulties as evidenced by eight unpaid judgments against him and no personal income tax filings for 1976, 1977, or 1978. Furthermore, Javersak testified that appellant had

---

2. Upon cross-examination, however, the following colloquy took place between appellant's attorney and Horr:

> Q. You're not trying to tell the jury here today that between the time that [appellant] and you went to bed and the time that you and [appellant] got in the pickup to go to the fire that that vehicle had been moved, are you?

> A. No.

On redirect examination, though, Horr stated that, in his opinion, appellant's pickup truck had been moved. This testimonial inconsistency, we believe, stems from Horr's confusion over the question asked of him on cross-examination. We also note that Horr states in his deposition that appellant's pickup truck had been moved during the night.

told him that he (appellant) kept two sets of books, one for the Internal Revenue Service and one for himself. Javersak also testified that appellant told him that he (appellant) was "skimming" money off his financial records.

Robert T. Wuttke, Jr., an insurance agent for a subsidiary agency of appellee, testified that in May of 1978 appellant requested that he increase the insurance on the building from $50,000 to $110,000. Wuttke refused to do this due to the peculiarity of the request, since the building was worth approximately $60,000.

There was a great amount of circumstantial evidence implicating appellant with arson. A jury issue was created and the jury has spoken. We uphold the verdict on the basis that there is competent and substantial evidence to sustain it. The evidence and the inferences therefrom are viewed in the light most favorable to upholding the verdict. *Olesen v. Snyder, supra.*

## II.

Appellant contends that the trial court erred in admitting the testimony of E. James Hood, who was legal counsel for Amby Friel prior to Friel's death in September of 1979. Hood testified that, on April 27, 1979, Friel entered his office and told him that appellant had threatened to burn down the Friel home with Mrs. Friel in it. Appellant denied ever making this statement. Over appellant's objection on grounds of hearsay, the trial court admitted Hood's testimony.

■ Hood also testified that immediately after observing Friel talking with appellant, Friel entered Hood's office and told Hood of appellant's threat. As to the emotional state of Friel at this time, Hood testified that Friel was "very agitated, upset, and excited."

SDCL 19–16–6 (Fed. Rule 803(2)) provides:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not

excluded by § 19–16–4 [hearsay is not admissible], even though the declarant is available as a witness.

We hold that the trial court was correct in ruling that the testimony of Hood was admissible under this exception to the hearsay rule. Moreover, we note in the transcript that this evidence first surfaced in the cross-examination of appellant. Appellant did not then object when asked on cross-examination whether he had in fact threatened to burn down the house of Amby Friel with Friel's wife in it. The excited utterance was then before the jury. Objections must be made immediately to allow the trial court to correct its errors. Failure to do so generally precludes appellate review. *Estate of Assmus*, 254 N.W.2d 159 (S.D. 1977); *In re Estate of Grimes*, 87 S.D. 187, 204 N.W.2d 812 (1973); *Chipperfield v. Woessner*, 84 S.D. 13, 166 N.W.2d 727 (1969); *Stark v. Stark*, 79 S.D. 178, 109 N.W.2d 904 (1961).

■ Appellant also argues that the trial court erred by allowing Mark Javersak to testify that appellant had told him that he (appellant) kept two sets of books and "skimmed." Prior to Javersak's testimony, appellant had denied on cross-examination that he ever told the Javersaks that he kept two sets of books.

SDCL 19–12–5 (Fed. Rule 404(b)) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Another common law category of permissible use of evidence of other acts that is not listed in SDCL 19–12–5 (Fed. Rule 404(b)) is impeachment. This category includes the use of evidence of prior acts to rebut a defendant's sweeping assertion of innocence. *See* Wright & Graham, Federal Practice and Procedure, Evidence § 5240 (1978). Here, the testimony of Javersak

was used to rebut appellant's statement denying that he ever said he kept two sets of books. Accordingly, we hold that the trial court was correct in allowing this testimony of Javersak.

### III.

■ Appellant contends that it was erroneous for the trial court to allow Bret Horr to testify that, in his opinion, appellant's pickup truck had been moved during the interim between the time he and appellant went to bed and when they left for the fire.

SDCL 19–15–1 (Fed. Rule 701) states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

As we have previously stated under FACTS, Horr's opinion was rationally based upon several distinct observations. Further, Horr's opinion helped clarify his testimony for the jury. We hold that the trial court did not err in allowing Horr to give his opinion with regard to the movement of appellant's pickup truck.

Accordingly, the judgment is affirmed.

DUNN, MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., concurs specially.

WOLLMAN, Chief Justice (concurring specially).

Although I do not agree with the majority opinion's treatment of the hearsay testimony questions, I join in the remainder of the opinion.