**Jerry NEMEC, Plaintiff and Appellant,**

v.

**Harold H. DEERING, Defendant and Appellee.**

**No. 14389.**

Supreme Court of South Dakota.

Argued March 21, 1984.

Decided June 6, 1984.

Ramon A. Roubideaux, Rapid City, for plaintiff and appellant.

Joseph H. Barnett of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellee.

RAMYNKE, Circuit Judge.

Jerry Nemec (Nemec) brought this action against attorney Harold Deering (Deering) alleging that Deering was negligent and breached his contract to represent Nemec in an action brought by Texaco Corporation (Texaco) against Nemec. The circuit court granted summary judgment to Deering. Nemec appeals.

Nemec was in the fuel and gasoline business as a consignee with Texaco beginning in 1971. By the mid-seventies Texaco decided to quit the consignee method and have all its dealers become distributors. Dealers were to purchase the equipment owned by Texaco and then operate on a commission basis. Nemec resisted making the change for four years. He alleges that in December 1979 he set out the following conditions as the only ones acceptable to him for becoming a distributor:

(1) A base price quote from Texaco on gas which would allow him a margin of at least 8 cents per gallon;

(2) The equipment would be sold by Texaco to Nemec for $10,000;

(3) Eleven thousand dollars in consignee commissions that were being held back by Texaco during the years 1976 through 1979 would be paid or set off against the purchase price;

(4) A $1500 audit charge on the Texaco books against Nemec would be reversed;

(5) Nemec would be released as a party defendant from an old lawsuit entitled *Nellie Iverson vs. Texaco and Nemec.*

Mr. Smythe (Smythe), an agent of Texaco, received these conditions. According to Nemec, Smythe's response was that Texaco would meet all of the conditions except for releasing Nemec from the Iverson lawsuit. Believing that Texaco would follow through on all of the conditions he had set out except the Iverson lawsuit, Nemec signed the distributor agreement that Smythe presented to him.

The price quoted by Smythe for gasoline received under the distributorship contract was much lower than Nemec had anticipated. When Nemec asked about the price of the gasoline, Texaco's main office verified a price that failed to consider the state and federal taxes.

On August 29, 1980 Texaco commenced replevin actions against Nemec to take possession of the equipment at the Nemec stations. Texaco alleged that Nemec had agreed to purchase the equipment when he entered into the distributorship agreement and that he had never paid for the equipment.

Nemec hired Deering to represent him in his defense against Texaco. When Nemec talked to Deering, Nemec informed Deering that Texaco was to give him the commissions they had withheld in the amount of over $11,000. Nemec also told Deering about Texaco's price misquote and that after the first two deliveries they had discovered their error and corrected it by raising the price of the gasoline. According to Nemec's figures, which were based on the original price quote, he was entitled to additional profits of $32,017.80 at the time this action was commenced. As time advanced, this rose to a figure of $165,682.38. In telling Deering about these claims, Nemec specified that he wanted a jury trial in federal court and Deering agreed that this would be done. However, Deering used the claim for $11,000 for withheld commissions and the larger claim for lost profits as a setoff in his answer to the replevin action. This was heard before a judge without a jury.

At trial, Texaco introduced their records without objection from Deering and stated that the $11,000 had been credited against Nemec's account and that they owed him nothing. They then introduced evidence to show that the price quoted in the distributorship contract was based on mistake and that they were entitled to have that rectified which would then cancel all of Nemec's claims for lost profits. The judge allowed Nemec's claims to be heard as a permissive counterclaim and ruled against him on all counts. This resulted in res judicata of the claims and the loss of Nemec's right to have them tried to a jury in federal court. There is controversy over whether or not Nemec was told that he would have 60 days within which to appeal the case. Before the 60 days expired, Nemec discharged Deering and talked to other attorneys.

The circuit court that granted the motion for summary judgment determined from all of the evidence of the Texaco trial that Nemec was adequately and satisfactorily represented prior to trial and at trial.

In reviewing a summary judgment to determine whether there is a genuine issue of material fact, this Court follows the guidelines set out in *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

(1) Evidence must be viewed most favorable to the nonmoving party;

(2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material fact exists;

(4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them;

(5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against movant;

(6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

"Summary judgment proceedings are not a substitute for trial when the claims asserted are not a sham or frivolous. The remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact." *Caneva v. Miners & Merchants Bank*, 335 N.W.2d 339, 341 (S.D.1983). Or-

dinarily, whether a defendant has breached the required standard of care is a question of fact for the jury. Where negligence is alleged there are highly disputed facts. As such, this is not a case for summary judgment as a matter of law.

▪ Nemec has alleged substandard representation by his attorney based on ill preparation, misinterpretation of the case, misinterpretation of the law and the way the attorney explained it to him. Nemec told Deering he wanted his claims for commissions and profits to be tried by a jury in federal court. Deering never told him that by using these claims as a permissive counterclaim to answer the replevin action he would lose the right to have them later tried in federal court; in fact, according to Nemec's deposition, Deering assured him that he could still have the jury trial in federal court after this replevin action was over. If it is found that Nemec lost his case and his rights of recovery from Texaco because Deering mishandled the case, then Nemec has been damaged and will be entitled to recover. These are all issues of fact to be determined at a trial before a judge or jury.

▪ In some cases of alleged negligence or breach of contract by an attorney, the plaintiff is required to show by expert testimony that the attorney failed to exercise a reasonable degree of care, skill and dispatch according to the standards of a particular community. However, there are cases where such testimony is not required. *Fishow v. Simpson*, 55 Md.App. 312, 462 A.2d 540 (1983). If this case is in the class of cases where common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts, expert testimony is not necessary. Was it a breach of contract or obvious negligence for Deering to interject Nemec's damage claims as a permissive counterclaim in a court action for replevin when Nemec had specifically requested that these claims be tried before a jury in federal court and Deering had agreed to do this? This is a question of material fact and not one that can be dismissed by summary judgment without being heard by a fact finder.

▪ "A genuine issue of fact exists where, on the basis of facts in the record, reasonable minds could differ on whether defendant's conduct measures up to the required standard." *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982). Inferences of attorney negligence may be drawn from failures to investigate a case adequately and from a failure to apply or to understand pertinent statutes, court rules or well known case law of the jurisdiction in which an attorney practices law. *Woodruff v. Tomlin*, 616 F.2d 924 (6th Cir.1980).

▪ In Texaco's action against Nemec, the circuit court threw out all allegations in Nemec's counterclaim because the only evidence regarding the claim was that produced by Texaco's records, which supposedly showed that the commissions claimed by Nemec had already been credited to him. Was Deering negligent in not requiring the production of Texaco's records prior to trial and auditing them? This is a question of material fact.

▪ Was Deering's failure to object to the introduction of Texaco's business records without more foundation negligence on his part? Should he have raised questions as to the materiality, authenticity and hearsay of such records to preserve the case's review for appeal?

▪ Was it negligence for Deering not to bring more forcefully to the trial court's attention the rule of contract law which states that where the relations between the parties had been such as to justify the offeror in expecting a reply, or when the offeree has come under some duty to communicate either a rejection or acceptance, the offeree's failure to communicate his rejection or to perform this duty, may result in a legal assent to the terms of the offer? The facts of this case would have justified putting forth such a position.

▪ Was Nemec poorly advised regarding the presentation of his counterclaim? His counterclaim was first based on profits

lost because of Texaco's price misquote which failed to take state and federal gas taxes into consideration. Had Deering correctly advised Nemec of a party's rights to correct an error based on mistake of fact under SDCL 53–4–9(1),* he could have made his original claim for the 8 cents per gallon he later claimed. The presentation of the whole issue was confusing but Deering should have clarified Nemec's rights so that Nemec could make one definite claim and not give the appearance of saying, "I'm entitled to 17 cents or 18 cents a gallon profit under the contract," but later having to take the position that he had been promised 8 cents a gallon. His credibility certainly suffered from this and as a layman he no doubt did not understand the effect of a contract erroneously based on a mistake of fact.

It is not for this court to determine whether or not Deering was negligent in his representation of Nemec but only to determine if there were genuine issues of material fact which should have been determined in a trial. We find that there are such issues and that it was improper to grant summary judgment. The judgment of the trial court is therefore reversed.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., dissents.

RAMYNKE, Circuit Judge, sitting for DUNN, J., disqualified.

WOLLMAN, Justice (dissenting).

I would affirm the summary judgment entered on behalf of defendant.

At the outset, it should be kept in mind that in an action against an attorney for negligence or violation of duty, the client has the burden of establishing that the attorney was negligent and that but for that negligence the client would have obtained a favorable judgment in the original action. *Taylor Oil Co. v. Weisensee*, 334

N.W.2d 27 (S.D.1983). *See also Harding v. Bell*, 265 Or. 202, 508 P.2d 216 (1973) and *Lewandowski v. Continental Cas. Co.*, 88 Wis.2d 271, 276 N.W.2d 284 (1979), and authorities cited therein. The question before us in the instant case, then, is whether attorney Deering did something that he should not have done or did not do something that he should have done and, if so, whether it made any difference.

With all due respect to the majority opinion, after carefully reviewing the record in this case I agree with the trial court that Nemec received adequate and satisfactory representation both during pretrial proceedings and at the trial itself.

The first issue that should be laid to rest is Deering's alleged failure to honor Nemec's request that the claim for damages be tried before a jury in federal court. For the purposes of discussing this issue, I will accept as true Nemec's allegation that he had instructed Deering to bring the damage claim on for trial before a federal court jury and that Deering had agreed to do so. That done, the question remains regarding what damage Nemec can establish as a result of Deering's failure to honor his commitment to his client. Are we holding that a litigant is likely to receive greater consideration of his claim by a federal court jury than he is by one of our state court judges sitting as the finder of fact? Nemec has cited no authority for this proposition, and I consider it an unwarranted admission to hold, *sub silentio*, that our state courts constitute a tribunal for the adjudication of our citizens' legal claims inferior to the federal courts.

To hold that Nemec is not entitled to recover damages for Deering's failure to bring the damage claim in federal court is not to say that Deering might not be subject to disciplinary action if it should be established that he was guilty of being less than candid with his client. *See, e.g.*, South Dakota Code of Professional Responsibili-

---

* SDCL 53–4–9 provides:

　Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in: (1) An

unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; . . . .

ty, Canon 1, DR 1–102(A)(4); Canon 7, DR 7–101(A)(1), SDCL 16–18, Appx. A malpractice action against an attorney should not be used as a substitute for a disciplinary action, however, and thus Nemec's allegation regarding the federal jury trial issue is misplaced.

In conclusion with respect to this issue, the opportunity of testifying before a federal court jury with respect to his experiences with Texaco might well have constituted a cathartic experience for Nemec, given the record of the major oil companies for cavalier, heavy-handed treatment of their small dealers, but would the result have ultimately been any different than it was in the trial before Judge Heck in state court? My review of the record persuades me beyond any reasonable doubt that the answer is in the negative.

With respect to Deering's alleged negligence in failing to require the production and auditing of Texaco's records prior to trial, the record reveals that Deering engaged in informal discovery procedures regarding the production of documents during his deposition examination of witness Smythe. The record does not reveal that Texaco's counsel failed in any way to produce the documents that they had agreed to furnish Deering. In any event, whether there were any other documents than those produced which related to the commissions claimed by Nemec seems to be immaterial inasmuch as Nemec has admitted in his brief to this court that he had been credited with the earned commissions. His complaint seems to be that the commissions had not been paid to him. If there is a difference between being paid for commissions and receiving credit on one's account with the entity from whom the commissions are due, the distinction escapes me.

With respect to Deering's alleged negligence in failing to object to the introduction of Texaco's business records on the grounds of materiality, authenticity, and hearsay, suffice it to say that the record made at trial quite clearly indicates that Judge Heck properly admitted the proffered exhibits under the business records

rule. SDCL 19–16–10. This court has long adopted a liberal approach to the admission of business records. *See, e.g., Moore v. Farmers Insurance Exchange,* 323 N.W.2d 870 (S.D.1982); *People in Interest of T.L.J.,* 303 N.W.2d 800 (S.D.1981); *State v. Ristau,* 290 N.W.2d 487 (S.D.1980); *Plank v. Heirigs,* 83 S.D. 173, 156 N.W.2d 193 (1968); and *Bentz v. Cimarron Ins. Co.,* 79 S.D. 510, 114 N.W.2d 96 (1962). Indeed, if on appeal from Judge Heck's decision the only ground of error alleged would have been the erroneous admission of the challenged records, I would venture to say that we would have summarily affirmed the judgment under SDCL 15–26A–87.1(3).

With respect to the claim that Deering should have brought to the trial court's attention more forcefully the rule of contract law regarding silence by an offeree, we tread here on dangerously subjective ground, for how can we tell from the pages of the cold record how forcefully, or unforcefully, an attorney has presented a claim to a trial judge sitting without a jury? Moreover, Texaco did reply to Nemec's variously stated offers, not only through Smythe's negotiations, but also ultimately through the written agreement and the subsequent deliveries of gasoline and the accompanying invoices. It seems quite clear from the record that Nemec could not possibly have been under any misapprehension regarding Texaco's position regarding the price to be paid for the equipment. Given this background, Deering should not be faulted in presenting Nemec's position in the manner in which he did.

Finally, was Nemec poorly advised regarding the presentation of his counterclaim? For Nemec to now even raise this question boggles the mind, for not until he filed his affidavit in response to Deering's affidavit in support of the motion for summary judgment did he come forth with the proposition that his claim against Texaco should have been based only upon the "more reasonable" eight cent per gallon margin of profit rather than the seventeen or eighteen cent price per gallon margin

that he had used in computing his trial-time claim of unpaid commissions in the amount of $129,426.85. One is tempted to use the Yiddish term that best describes Nemec's audacity in now contending that his trial counsel erred in accepting and presenting the figures that he himself had compiled in support of his claim. If the presentation of the counterclaim was confusing, it was the result of Nemec's own computations and subsequent testimony at trial that "a deal is a deal." It will not now lie in Nemec's mouth to claim that Deering should have presented a claim other than that which Nemec attested to. Had Deering presented a claim based solely upon an eight cent per gallon margin figure, no doubt Nemec would be alleging malpractice in Deering's waiver of the balance of his original claim. In any event, as appears from his memorandum decision, Judge Heck clearly understood the issues involved in this case and just as clearly, and correctly, ruled that Nemec was not entitled to take advantage of the obviously mistaken gasoline price quotation and that the distributorship agreement had not fixed that artificially low price as the base price upon which all future deliveries of gasoline could be purchased. Moreover, Deering, in his opening statement, his cross-examination of witness Smythe, and in his direct examination of Nemec fully and fairly presented the eight cent per gallon margin theory of recovery to the trial court. That the trial court did not accept this theory is hardly Deering's fault, unsupported as it was by anything other than Nemec's bare allegations.

In summary, although it is certainly true that no court should excuse or overlook an attorney's malpractice that resulted in a loss to the client, neither should an attorney be forced to run the gauntlet of a specious malpractice action brought by a disgruntled, dissatisfied client. Because I am firmly convinced that the instant case falls into the latter category, I would affirm the trial court's summary judgment.