STATE of South Dakota ex rel. Sharen
MAESCHEN, Plaintiff and Appellee,

v.

Randall WITTSTRUCK, Defendant
and Appellant,

and

Sharen Maeschen, Defendant.

No. 14800.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1985.

Decided Nov. 13, 1985.

Shelley B. Heller, Asst. Atty. Gen.,
Pierre, for plaintiff and appellee; Mark V.
Meierhenry, Atty. Gen., Pierre, on brief.

James F. Margadant of Mahan Law Of-
fices, Parkston, for defendant and appel-
lant.

HERTZ, Acting Justice.

This is an appeal from a judgment estab-
lishing Randall Wittstruck, (Wittstruck),
appellant, the father of the minor twin
daughters of Sharen Maeschen, (Maes-
chen), appellee, and holding him obligated
to repay the sum of $8,696.97 to the State
of South Dakota, (State), appellee, for Aid
to Dependent Children payments advanced
on behalf of the minor children. We re-
verse.

Paternity actions brought pursu-
ant to SDCL Ch. 25–8 et seq., are civil
actions, *State ex rel. Keuck v. Gamber*,
331 N.W.2d 573 (S.D.1983). A preponder-
ance of evidence will sustain proof of pater-
nity, *Matter of F.J.F.*, 312 N.W.2d 718 (S.D.
1981). In paternity proceedings in this
state, the trial court's findings will not be
set aside unless they are clearly erroneous
in light of the evidence, *Vander Werf v.
Anderson*, 86 S.D. 321, 195 N.W.2d 145
(1972).

The evidence in this case shows Maeschen gave birth to twin daughters on December 31, 1981 at a Sioux Falls hospital. Both infants weighed under five pounds each. The children were named Stacey Mario Maeschen and Sukie Marie Maeschen. The birth certificate does not contain a father's name. At the time, Maeschen was single, unemployed and lived in Mitchell, South Dakota.

Maeschen did not testify at trial. However, State introduced Exhibit No. 5, a Confidential Paternity Questionnaire (questionnaire), which was furnished to Maeschen by the Office of Child Support Enforcement (Office), a division of the South Dakota Department of Social Services. Maeschen completed and signed the questionnaire in her own hand. It was not sworn and given under oath. She returned the questionnaire to Office personally.

According to the answers in questionnaire, Maeschen and Randall Wittstruck arranged to meet at the Red Baron Bar in Mitchell, South Dakota on April 7, 1981. They had sexual relations at the end of their date. Following this meeting, the parties commenced a romantic relationship which lasted until mid-September of that year. The parties were engaging in sexual intercourse during May of 1981 which was deemed the period of time when conception most likely occurred.

On July 9, 1981, Maeschen informed Wittstruck that she was pregnant, and that he was the father. She related her prospective delivery date as February 28, 1982. Shortly thereafter, the couple planned to be married, however, the engagement was subsequently terminated.

Commencing in August of 1981, Wittstruck began making weekly payments of $25.00 to Maeschen to assist with her pregnancy. Wittstruck ceased making payments around November 1, 1981, at which time he denied paternity. At the time of the twins birth, Maeschen had applied for Aid to Dependent Children (ADC) benefits. Records of Office showed a total of $8,696.97 was provided to Maeschen and her daughters through September of 1984 when she went off the ADC program.

At the time of trial, Wittstruck was 24 years old, single, and lived with his parents in Ethan, South Dakota. He was employed as an automobile mechanic. Wittstruck's testimony at trial substantially corroborated Maeschen's answers to the questionnaire. He admitted having sexual intercourse with Maeschen during the probable time of conception; he became engaged to her after she disclosed her pregnancy; and, he admitted to making a number of payments to assist in her pregnancy. However, Wittstruck argued that the questionnaire was inadmissible hearsay and that he was denied the opportunity to cross-examine Maeschen since she did not testify at trial.

The trial court found that Wittstruck had sexual intercourse with Maeschen during the period of time when conception occurred; that Wittstruck admitted access to Maeschen at said time; that pictures were introduced at trial which showed them together; and that State had expended the sum of $8,696.97 on behalf of Maeschen's minor children. The trial court held by a preponderance of the evidence that Wittstruck was the father of Stacey Mario and Sukie Marie Maeschen and that he was obligated to repay the State said sums advanced.

On appeal, Wittstruck contends that the questionnaire was inadmissible under the hearsay rule and that due to Maeschen's failure to sustain a prima facie case, his motion for dismissal should have been granted in that the evidence was insufficient to establish paternity. Additionally, Wittstruck argued that the trial court properly denied admission of the court ordered blood tests.

Maeschen's answers to the questionnaire accuse Wittstruck of fathering her children. Maeschen did not testify at trial. Therefore the questionnaire was being offered to prove the truth of the matter asserted and, as such, was inadmissible hearsay under SDCL 19–16–1(3) and 19–16–

4, unless it falls within one of the exceptions to the hearsay rule.

Thus, we examine initially whether State's Exhibit No. 5, the paternity questionnaire, was admissible under an exception to the hearsay rule. State called William M. Heintz (Heintz), an investigator for the Office of Child Support Enforcement, to furnish the requisite foundation to admit the questionnaire in Maeschen's absence. Heintz testified that he mailed a paternity questionnaire which was regularly used by his office to Maeschen by certified mail; that she filled it out herself and personally returned it to him; that the Office relied on this form to conduct its routine business activities; and that he discussed the questionnaire with Maeschen when she returned it. State and Maeschen argued therefore that Heintz's testimony provided the necessary foundation to bring the questionnaire within the business records exception to the hearsay rule set forth in SDCL 19–16–10.

Alternatively, Maeschen contended that the questionnaire was admissible hearsay under the public records exception as provided in SDCL 19–16–12. Maeschen argued that the investigation of her completed questionnaire which was conducted by Heintz, as an agent for the Office, resulted in factual findings made pursuant to authority granted to the Office by the Department of Social Services. As such, the DSS is required to enforce the Business Records Act for the protection of the unmarried mother and her child in compliance with SDCL 26–4–8, which statute cross-references paternity actions. Thus, State and Maeschen assert that the questionnaire falls within subsection (3) of the public records exception.

■ We agree with Wittstruck's argument that the essential foundational requirement for both the business records and public records exceptions to the hearsay rule is that the record be trustworthy. Under SDCL 19–16–10 business records will be admitted "unless the source of information or the method of circumstances of preparation indicate lack of trustworthi-

ness." Similarly, public records will be admitted "unless the sources of information or other circumstances indicate lack of trustworthiness" as set forth in SDCL 19–16–12. In *Bentz v. Cimarron Insurance Co.,* 79 S.D. 510, 114 N.W.2d 96 (1962), this court held that not every written memo, letter, or report, is admissible under the Business Records Act simply because it was made in the conduct of some business. The *Bentz* opinion further stated that the trial court has the discretion to determine if the sources of information, method, and preparation are such as to justify admission of such record in evidence. The trial court's evidentiary rulings, therefore, will not be disturbed on appeal in the absence of a manifest abuse of discretion.

In the instant case, all information contained in the paternity questionnaire was filled in by Maeschen herself. The document was not sworn to or given under oath by Maeschen who did not testify at trial. Maeschen had no duty to anyone to make a truthful account of the facts as recorded therein. Moreover, it is expressly written in the instructions appearing on the front of the questionnaire that, "[The questions] are designed to give the state's attorney the kind of information needed to effectively represent you in this action." As such, the questionnaire was specifically devised for use by the State. Therefore, as the relatrix in the paternity suit at bar, it was unquestionably in Maeschen's self-interest to tell a version of the facts most favorable to her position that Wittstruck fathered her twin daughters.

*Bentz, supra,* cites *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), which held a railroad engineer's accident report inadmissible under the federal statute as not being a record made in the regular course of business. In an opinion written by Justice Douglas it was found that such employees' reports were not for the systematic conduct of the railroad business, but rather their primary utility was in litigation not railroading. Similarly, the questionnaire in the instant case was designed to aid the state's attorney in prepar-

ing Maeschen's paternity action. As such, its primary usage as a litigation tool is particularly cogent when it is considered that the trial court accepted as fact Maeschen's answers which stated that she did not have sexual intercourse with anyone other than Wittstruck during the two months before and after her last menstrual period preceding the pregnancy. However, Wittstruck testified that Maeschen told him that she was going out with one other man in May of 1981, the probable month that conception occurred. Indeed, Wittstruck further testified that Maeschen had told him she had sexual intercourse with 26 other men within the 4 to 5 month period prior to their first date.

Due to Maeschen's failure to testify at trial, it was left up to Heintz, as custodian of the record, to qualify the questionnaire for admission under a hearsay exception. Although Heintz testified that the questionnaire was a routine form used by the Office in alleged paternity cases, he also testified that he discussed it with Maeschen for no more than ten minutes. This was the only time Heintz met with Maeschen. It follows that their limited contact was insufficient to support any independent factual findings which would have enabled Heintz to verify the truth and reliability of Maeschen's answers so as to safeguard the trustworthiness of the record. Moreover, all the information which makes the questionnaire relevant to the instant action did not originate with the Office, rather it was supplied by Maeschen on whose behalf the State instigated the proceedings against Wittstruck. The necessary "personal knowledge" requirement on the part of the Office to bring the questionnaire within the public records exception is entirely absent. As such, the questionnaire is untrustworthy in its entirety because of Maeschen's strong motivation to misrepresent its contents.

Given Maeschen's motivation and opportunity to misrepresent, coupled with the fact that the questionnaire was specifically prepared for use by the prosecuting attorney, and in light of the fact that Heintz's investigation appeared inadequate to verify the truth of Maeschen's answers, no sufficient indices of trustworthiness were present which would allow admission of the questionnaire under either the business records or public records exceptions to the hearsay rule. Not only did Exhibit # 5 (paternity questionnaire) claim Wittstruck was the father of her twin daughters, Maeschen also stated in the questionnaire that her doctor told her that the twins were born prematurely. The doctor also did not testify, which would make this statement hearsay without question, and again, it was offered to prove a very important element of her claim, namely, time of conception without benefit of confrontation.

In *State v. Ree*, 331 N.W.2d 557 (S.D. 1983) we said SDCL 19–16–12, the public document exception to the hearsay rule, does not preclude admittance of "routine" matters noted on the record. (e.g. date of birth). But that the real purpose of the public records exception rule is to preclude admittance of a record tending to prove the prosecution's case since it would deprive a defendant of cross-examination. Here Maeschen's claim of paternity against Wittstruck, as well as her statement as to the twins' premature birth, are much more than "routine matters." These claims go to the very heart of the prosecution's case. Exhibit # 5 was clearly offered to prove the issue of paternity without the benefit of cross-examination by Wittstruck. Since the primary object of the hearsay rule is to bar untrustworthy evidence, it is apparent that the trial court abused its discretion and committed reversible error by admitting Exhibit # 5.

Accordingly, we hold that admission of the questionnaire over objection was error because it contains hearsay. Moreover, the questionnaire was not admissible either as a business record or as a public record of factual findings made by a state agent. As such, the unsworn questionnaire, where Wittstruck was denied the right to cross-examination, comes within the hearsay rule and is, therefore, inadmissible.

Wittstruck next argues that his motions for dismissal should have been granted because the record was devoid of evidence which would sustain a finding that the State had proved a prima facie case relative to the paternity issue. We agree.

■ In determining whether to grant a dismissal, the trial court applies the same standards as it would if a motion for a directed verdict had been made. 75 Am. Jur.2d Trials §§ 438, & 442 (1974). Thus, in determining whether Maeschen has established a prima facie case the court views the evidence in the light most favorable to the plaintiff. *Northwest Realty Co. v. Perez,* 81 S.D. 500, 504, 137 N.W.2d 345, 347 (1965). To that end, there was no competent evidence in the case at bar concerning the time conception most likely occurred. Moreover, the State's two photographs of Maeschen and Wittstruck which were admitted into evidence, had no probative value other than showing them together. As mentioned above, the trial court's substantial reliance on the paternity questionnaire was clearly erroneous based on the fact that its contents amounted to inadmissible hearsay. Therefore, we hold that Wittstruck was entitled to a dismissal in view of State and Maeschen's failure to sustain a prima facie case. In light of the foregoing, we need not reach the issue pertinent to the excluded blood test evidence.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., and HERSRUD, Retired Circuit Judge, concur.

HERSRUD, Retired Circuit Judge, sitting for WUEST, Circuit Judge acting as a Supreme Court Justice, disqualified.